United States District Court
Southern District of New York
--------------------------------------------------------x
Alpha Capital Anstalt,

                              Plaintiff,

              v.                                    Complaint

Advanced Cell Technology, Inc.,                     11 Civ 6458 (PAC)

                              Defendant.
--------------------------------------------------------x


        Plaintiff Alpha Capital Anstalt, by its attorneys, for its Complaint herein, respectfully

alleges:


the parties


        1.  Plaintiff Alpha Capital Anstalt ("Alpha Capital"), is a Liechtenstein corporation with

its principal place of business in Vaduz, Liechtenstein.


        2.  Upon information and belief, Defendant Advanced Cell Technology, Inc. ("ACTI") is

a Delaware corporation with its principal place of business in Marlborough, Massachusetts.


jurisdiction and venue


        3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that

the action is between citizens of a state and citizens of a foreign state and the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.  Venue is proper in this District pursuant to 28 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is the subject of the action is situated and it is the exclusive district in which the parties agreed that the claims hereafter set forth can be brought.

facts common to all claims

5.  On or about November 12, 2009, Alpha Capital purchased from ACTI a $720,000 face amount Convertible Note for $600,000 and a Warrant to purchase 4,877,000 shares of ACTI common stock. The purchase was made pursuant to the terms of the Subscription Agreement dated November 12, 2009.

6.  On or about February 18, 2010, in a closing on the second tranche of the investment pursuant to the Subscription Agreement, Alpha Capital purchased another $720,000 face amount Convertible Note and another Warrant to purchase 4,788,000 shares of ACTI common stock. Other investors also purchased ACTI's Warrants and Convertible Notes at the same times that Alpha Capital made its purchases. Alpha Capital invested less than half of all of the funds invested by all investors to purchase Warrants and Convertible Notes pursuant to the November, 2009 Subscription Agreement. The Convertible Notes received in 2009 and 2010 are together referred to hereafter as the "Convertible Notes."

2

7.  Alpha Capital also holds ACTI Warrants which Alpha Capital acquired in connection with investments in ACTI in 2005 and 2006. All the aforementioned Warrants are hereafter collectively referred to as the "Warrants."

8.  The Warrants could be exercised by Alpha Capital, in whole or in part, at any time and from time to time, at its option, during the term of the Warrants, to obtain ACTI common shares. The Convertible Notes, similarly, provided that Alpha Capital, at any time and from time to time, at its option, could convert all or part of the Convertible Notes into shares of ACTI common stock upon submission of a Conversion Notice.

9.  The Warrants contained an initial Exercise Price of $0.108 per share. The Convertible Notes contained an initial exercise price of $0.10 per share.

10.  In order to induce Alpha Capital to purchase the ACTI securities, ACTI agreed that the initial Exercise Price of the Warrants and the initial Conversion Price of the Convertible Notes were subject to downward adjustment in the event ACTI thereafter issued shares, or securities convertible into shares, at a price that was lower than the initial Exercise and Conversion Prices.

11.  In that event, ACTI was obligated to reduce the Exercise and Conversion Prices of Alpha Capital's Warrants and Notes to such lower so that the average price of the shares obtainable upon exercise of the Warrants and conversion of the Convertible Notes was reduced

3

to the new Exercise and Conversion Price and to increase the number of shares covered by the Warrants so that the total initial dollar amount of the Exercise Price, upon exercise of the entire Warrant, would remain the same.

12. Thus the Warrants and the Convertible Notes provided, in relevant part:

> Warrant ¶3.3: <u>Share Issuance</u>. Until the Expiration Date, if the Company shall issue any Common Stock . . . prior to the complete exercise of this Warrant for a consideration less than the Purchase Price [Exercise Price] that would be in effect at the time of such issue, then, and thereafter successively upon each such issue, the Purchase Price [Exercise Price] shall be reduced to such other lower price for the then outstanding Warrants. For purposes of this adjustment, the issuance of any security or debt instrument of the Company carrying the right to convert such security or debt instrument into Common Stock or of any warrant, right or option to purchase Common Stock shall result in an adjustment to the Purchase Price [Exercise Price] upon the issuance of the above described security, debt instrument, warrants, right, or option if such issuance is at a price lower than the Purchase Price [Exercise Price] in effect upon such issuance and again at any time upon any subsequent issuances of shares of Common Stock upon exercise of such conversion or purchase rights if such issuance is that a price lower than the Purchase Price [Exercise Price] in effect upon such issuance . . . Upon any reduction of the Purchase Price [Exercise Price], the number of shares of Common Stock that the Holder of this Warrant shall thereafter, on the exercise hereof, be entitled to receive shall be adjusted to a number determined by multiplying the number of shares of Common Stock that would otherwise (but for the provisions of this Section 3.3) be issuable on such exercise by a fraction of which (a) the numerator is the Purchase Price [Exercise Price] that would otherwise (but for the provisions of this Section 3.3) be in effect, and (b) the denominator is the Purchase Price [Exercise Price] in effect on the date of such exercise.
>
> Convertible Notes ¶3.1(c)D: <u>Share Issuance</u>. So long as this Note is outstanding, if the Borrower shall issue any Common Stock . . .

4

prior to the complete conversion or payment of this Note, for a consideration per share that is less than the Fixed Conversion Price that would be in effect at the time of such issue, then, and thereafter successively upon each such issuance, the Fixed Conversion Price shall be reduced to such other lower issue price. For purposes of this adjustment, the issuance of any security or debt instrument of the Borrower carrying the right to convert such security or debt instrument into Common Stock or of any warrant, right or option to purchase Common Stock shall result in an adjustment to the Fixed Conversion Price upon the issuance of the above described security, debt instrument, warrant, right, or option and again upon the issuance of shares of Common Stock upon exercise of such conversion or purchase rights if such issuance is at a price lower than the then applicable Fixed Conversion Price.

13. ACTI was also required to notify Alpha Capital promptly of any event which required a downward modification of the Exercise and Conversion Prices and a commensurate increase in the number of shares covered by the Warrants and Convertible Notes. ACTI was obligated to provide Alpha Capital with a statement setting forth the consideration ACTI received for the additional shares issued, the number of shares of ACTI common stock outstanding and the Exercise Price and the number of shares to be received upon exercise of the Warrants with the reduced Exercise Price.

14. Thus the Warrants and the Convertible Notes further provided, in relevant part:

> Warrants ¶5: "Certificate as to Adjustments. In each case of any adjustment or readjustment in the shares of Common Stock (or Other Securities) issuable on the exercise of the Warrants, the Company at its expense will promptly cause its Chief Financial Officer or other appropriate designee to compute such adjustment or readjustment in accordance with the terms of the Warrant and prepare a certificate setting forth such adjustment or readjustment

5

and showing in detail the facts upon which such adjustment or readjustment is based, including a statement of (a) the consideration received or receivable by the Company for any additional shares of Common Stock (or Other Securities) issued or sold or deemed to have been issued or sold, (b) the number of shares of Common Stock (or Other Securities) outstanding or deemed to be outstanding, and (c) the Purchase Price and the number of shares of Common Stock to be received upon exercise of this Warrant, in effect immediately prior to such adjustment or readjustment and as adjusted or readjusted as provided in this Warrant. The Company will forthwith mail a copy of each such certificate to the Holder of the Warrant and any Warrant Agent of the Company (appointed pursuant to Section 11 hereof)."

Convertible Notes ¶3.1(d): "Whenever the Conversion Price is adjusted pursuant to Section 3.1 (c) above, the Borrower [ACTI] shall promptly mail to the Holder a notice setting forth the Conversion Price after such adjustment and setting forth a statement of the facts requiring such adjustment."

15.  Upon information and belief, during the first three months of 2010, ACTI issued securities to JMJ Financial, Inc. ("JMJ") which required ACTI to reduce the Exercise and Conversion Prices of the Alpha Capital securities.

16.  Although obligated to do so, ACTI did not provide to Alpha Capital the required notice and calculation of the reduction in the Exercise and Conversion Price cause by the issuance of the securities to JMJ or caused by any other share issuance since November 12, 2009.

17.  Based upon public filings by ACTI, Alpha Capital believes that the Exercise and Conversion Price of its securities, since the beginning of 2010, has been reduced to at most $0.0353 and likely to a lower number.

18.  At various times, and from time to time since the beginning of 2010, Alpha Capital exercised its Warrants and converted its Convertible Notes into shares of ACTI common stock. Thus following chart sets forth Alpha Capital's Warrant exercises and Convertible Note conversions.

| Date | $ Amount Converted | Exercise/Conversion Price | Shares Received |
|---|---|---|---|
| 11/30/10 | 95,000 | $0.10 | 950,000 |
| 12/6/10 | 200,000 | $0.10 | 2,000,000 |
| 12/6/10 | 13,571 | $0.10 | 135,710 |
| 12/20/10 | 81,000 | $0.108 | 750,000 |
| 12/21/10 | 361,800 | $0.108 | 3,350,000 |
| 12/22/10 | 74,304 | $0.108 | 688,000 |
| 12/23/10 | 510,104 | $0.108 | 5,101,043 |
| 8/22/11 | 517,104 | $0.108 | 4,788,000[1] |

19.  Had Alpha Capital known that the initial Exercise and Conversion Prices had been reduced as a result of the JMJ transaction, Alpha Capital should have received the following amounts of additional shares on those exercises and conversions: 11/30/10 - 1,714,218; 12/6/10 - 3,665,722; 12/6/10 - 248,738; 12/20/10 - 1,544,618; 12/21/10 - 6,899, 292;12/22/10 - 1,416,929;

_____

[1]No shares were actually received pursuant to the 8/22/10 Warrant exercise which was accomplished by email. The share number is simply a mathematical calculation of the number of Warrants exercised times the initial Exercise Price.

7

12/23/10 - 9,349,504; 8/22/11 - 14,648,839.[2] Thus, as a result of the reduction in the Exercise and Conversion Prices caused by the JMJ transaction, ACTI is obligated to deliver immediately at least 39,514,859 shares of its common stock to Alpha Capital.

21.  Alpha Capital will not know the exact number of additional shares to which it is entitled until ACTI complies with its obligation to provide the details of all share issuances since November 12, 2009 at prices lower than the then applicable Exercise and Conversion Prices.

20.  Despite due demand therefor, ACTI has refused to deliver 39,514,859 shares, or any other number of additional shares, to Alpha Capital.

First Claim for Relief
(Failure To Deliver Shares
Relief Sought - Preliminary and Permanent Injunction)

21.  Alpha Capital realleges paragraphs 1 through 20.

22.  Pursuant to the agreements between them, ACTI is obligated to deliver to Alpha Capital at least 39,514,859 shares of its common stock.

---

[2]Because no actual shares were received by Alpha Capital pursuant to the 8/22/11 exercise, the number of additional shares to which Alpha Capital is entitled is determined by multiplying the number of Warrants exercised times the reduced Exercise Price.

8

23.  Despite its obligation to do so, ACTI has failed and refused to deliver said shares of stock to Alpha Capital.

24.  As a result of such refusal by ACTI, Alpha Capital has suffered damages.

25.  Alpha Capital has no adequate remedy at law.

26. In the absence of injunctive relief, Alpha Capital will suffer irreparable harm.

27.  Alpha Capital requests, therefore, that the Court enter an order requiring ACTI to deliver immediately at least 39,514,859 shares of its common stock to Alpha Capital.

Second Claim for Relief
(Failure To Deliver Shares
Relief Sought - Damages)

28.  Alpha Capital realleges paragraphs 1 through 24.

29.  Alpha Capital, therefore, seeks an award of damages in an amount to be determined at trial.

Third Claim for Relief
(Failure To Provide Notice of Reduction In Exercise and Conversion Price
Relief Sought - Damages)

30.  Alpha Capital realleges paragraphs 1 through 20.

31. Although obligated to so pursuant to the agreements between the parties, ACTI failed to provide the notices and related calculations of the reduction in the Exercise and Conversion Prices of Alpha Capital's securities.

32.  As a result of such failure, Alpha Capital has suffered damages.

33. Alpha Capital, therefore, seeks an award of damages in an amount to be determined at trial.

Wherefore, Plaintiff Alpha Capital Anstalt seeks judgment against Defendant Advanced Cell Technology, Inc. as follows:

i) on the First Claim for Relief, Alpha Capital requests an order requiring ACTI to deliver immediately at least 39,514,859 shares of its common stock to Alpha Capital; and

10

ii) on the Second and Third Claims for Relief, for damages in an amount to be determined at trial; and

iii) on all claims for relief, for interest, attorneys fees and the costs and disbursements of this action; and

iv) for such other, further and different relief as to the Court may seem just and proper.

Law Offices of Kenneth A. Zitter

By _____
        Kenneth A. Zitter
Attorneys for Plaintiff
Alpha Capital Anstalt
260 Madison Avenue, 18th Floor
New York, NY 10016
212-532-8000
KAZ-3195

11