UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Alpha Capital Anstalt,**<br><br>    **Plaintiff,**<br><br> v.<br><br>**Advanced Cell Technology, Inc.,**<br><br>    **Defendant.** | 11 Civ. 6458 (PAC) |

**DEFENDANT ADVANCED CELL TECHNOLOGY, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF ALPHA
CAPITAL ANSTALT'S MOTION FOR A PRELIMINARY INJUNCTION
<u>AND FOR PRELIMINARY DECLARATORY RELIEF</u>**

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY  10112-0015
Telephone: 212-653-8700
Facsimile: 212-653-8701
*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ..................................................................................................1

II. STATEMENT OF FACTS ..........................................................................................................1

    A. Advanced Cell............................................................................................................1

    B. Advanced Cell's Transactions With JMJ Financial..................................................3

    C. Alpha Capital Files The Instant Action .....................................................................4

III. ARGUMENT................................................................................................................................5

    A. The Heightened Applicable Standard .......................................................................5

    B. Alpha Is Not Entitled To Injunctive Relief Because Any Alleged Harm Is Compensable By An Award Of Money Damages ....................................................6

    C. Assuming *Arguendo* That Alpha Somehow Establishes That Its Damages Could Not Be Compensated By A Monetary Award, Alpha Has Not Established a Clear and Substantial Likelihood of Success on the Merits ............10

    D. The Motion Should Also Be Denied Because Compliance With Alpha's Proposed Preliminary Injunction Would Be Impracticable And Alpha's Request is Impermissibly Vague. .......................................................................12

    E. If An Injunction Is Granted, Plaintiff Should Be Required To Post A Bond ........13

IV. CONCLUSION...........................................................................................................................15

TABLE OF AUTHORITIES

Page(s)

Cases

*Alpha Capital Aktiengesellschaft et al. v. Group Management Corp.*
2002 WL 31681798 (S.D.N.Y. Nov. 25, 2002) ................................................................... 11

*Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*, 2003
WL 328302 (S.D.N.Y. Feb. 11, 2003) ......................................................................... 12, 15

*Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*
09 Civ. 670, Dkt. No. 11 ......................................................................................................... 7

*Bano v. Union Carbide Corp.*
361 F.3d 696 (2d Cir. 2004) ................................................................................................. 13

*Bell & Howell: Mamiya Co. v. Masel Supply Co.*
719 F.2d 42 (2d Cir. 1983) ..................................................................................................... 6

*Brodzki v. State of Nebraska*
2011 BL (D. Neb. June 23, 2011) ........................................................................................ 13

*Celeste Trust Reg. and Esquire Trade & Finance, Inc. v. Greystone Digital Technology,
Inc.* 01 Civ. 91 (CBM) ......................................................................................................... 11

*Clear Channel Outdoor, Inc. v. City of New York*
608 F. Supp. 2d 477 (S.D.N.Y. 2009) .................................................................................... 5

*Corning Incorporated v. PicVue Electronics, Ltd.*
365 F.3d 156 (2d Cir. 2004) ................................................................................................. 13

*CRP/Extell Parcel I, LP v. Cuomo*
394 Fed. Appx. 779 (2d Cir. 2010) .................................................................................... 5, 7

*Doctor's Assocs., Inc. v. Distajio*
107 F.3d 126 (2d Cir. 1997) *cert. denied*, 522 U.S. 948 (1997) ........................................ 13

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*
356 F.3d 1256 (10th Cir. 2004) .............................................................................................. 9

*Edgar v. MITE Corp.*
457 U.S. 624 (1982) .............................................................................................................. 14

*ESPN, Inc. v. Office of the Comm'r of Baseball*
76 F. Supp. 2d 416 (S.D.N.Y. 1999) ...................................................................................... 8

*Fireman's Ins. Co. of Newark v. Keating*
   753 F. Supp. 1146 (S.D.N.Y. 1990) ............................................................................. 5, 9

*Halifax Fund, L.P. v. Response USA, Inc.*
   1997 WL 33173241 (Del. Ch. May 13, 1997) ................................................................. 9

*Hardy v. Fisher*
   701 F. Supp. 2d 614 (S.D.N.Y. 2010) ......................................................................... 5, 10

*Interlink Int'l Fin. Svcs., Inv. v. Block*
   145 F.Supp.2d 312 (S.D.N.Y. 2011) ............................................................................... 14

*JSG Trading Corp. v. Tray-Wrap, Inc.*
   917 F.2d 75 (2d Cir. 1990) ................................................................................................ 5

*Kamerling v. Massanari*
   295 F.3d 206 (2d Cir. 2002) .............................................................................................. 6

*Levola v. Fischer*
   403 Fed. Appx. 564 (2d Cir. 2010) ................................................................................... 5

*Life Technologies Corp. v. AB Sciex PTE, Ltd.*
   99 U.S.P.Q.2d 1785 (S.D.N.Y. 2011) .............................................................................. 9

*Longview Special Finance v. Infinium Labs, Inc.*
   06 Civ. 1772 ..................................................................................................................... 12

*Material Handling Products Corp. v. Nacco Materials Handling Group*
   1:11-cv-0118, 2011 WL 1205064 (N.D.N.Y. March 28, 2011) ....................................... 6

*Merrill Lynch v. John M. Doe*
   868 F. Supp. 532 (S.D.N.Y. 1994) ................................................................................... 5

*Morgan Stanley & Co. v. Archer Daniels Midland Co.*
   570 F. Supp. 1529 (S.D.N.Y. 1983) ................................................................................. 8

*Nokia Corp. v. InterDigital, Inc.*
   645 F.3d 553 (2d Cir. 2011) ............................................................................................ 13

*Passlogix, Inc. v. 2FA Technology, LLC*
   08 Civ. 10986 (PKL), 2010 WL 2505628 (S.D.N.Y. June 21, 2010) ..................... 5, 6, 9

*Southex Trading Co. v. Piankay Realties*
   59 N.Y.S.2d 362 (N.Y. Sup. 1946) ................................................................................ 13

*Ticor Title Insurance Co. v. Cohen*
   173 F.3d 63 (2d Cir. 1999) ................................................................................................ 8

*Time Warner Cable, Inc. v. DIRECTV, Inc.*
   497 F.3d 144 (2d. Cir. 2007) ........................................................................................... 10

*Warren Pearl Construction Corporation v. Guardian Life Insurance Company of America*
    No. 08 Civ. 9445(WHP), 2008 WL 5329962 (S.D.N.Y. Dec. 9, 2008) ....................................6

*Western Inv. LLC v. DWS Global Commodities Stock Fund, Inc.*
    705 F. Supp. 281 (S.D.N.Y. 2010) ........................................................................................8

*Zugsmith, et al. v. Davis, et al.*
    108 F. Supp. 913 (S.D.N.Y. 1952) ........................................................................................7

<u>Other Authorities</u>

Federal Rule of Civil Procedure 65(c) ............................................................................................13

Federal Rule of Civil Procedure 65(d) ...........................................................................................13

8 Del. C. § 242(b) ..........................................................................................................................12

Defendant Advanced Cell Technology, Inc. ("Defendant" or "Advanced Cell"), by and through the undersigned counsel, submits this Memorandum of Law in Opposition to the Motion for a Preliminary Injunction and for Preliminary Declaratory Relief (the "Motion") of Plaintiff Alpha Capital Anstalt ("Plaintiff" or "Alpha"), as follows.

## I.

## PRELIMINARY STATEMENT

Plaintiff has filed a Motion seeking preliminary declaratory relief and a preliminary injunction requiring Defendant to deliver at least 39,514,859 authorized shares of its common stock. However, Plaintiff's allegation that Defendant is insolvent is false, and there is no reason why Plaintiff's claims could not be satisfied by an award of monetary damages. For this reason alone, the Motion should be denied.

Plaintiff's Motion should also be denied because Plaintiff is not likely to succeed on the merits of its claim based on the terms of the agreements at issue. Moreover, the relief that Plaintiff requests is impermissibly vague and is impracticable, if not impossible, to grant.

For the foregoing reasons, the Court should deny the Motion.

## II.

## STATEMENT OF FACTS

The following facts are based upon the allegations in Plaintiff's September 14, 2011 complaint (the "Complaint") and the Declaration of Gary Rabin, chief executive officer of Advanced Cell (the "Rabin Declaration").

**A.**     **Advanced Cell**

Advanced Cell is a biotechnology company that specializes in the development of cellular therapies for the treatment of diseases and conditions that impact tens of millions of people worldwide. It applies stem cell-based technologies (both adult and human embryonic)

and other proprietary methods in the field of regenerative medicine to bring patient-specific therapies from the lab bench to the bedside. Rabin Declaration ¶ 2.

Advanced Cell has three cellular product platforms based on ground-breaking stem cell technology. It is focused on commercializing its human embryonic stem cell ("hESC")-based Retinal Pigment Epithelial ("RPE") therapy for degenerative retinal disease, for which it recently initiated two Phase 1/2 clinical trials. It is also developing its hESC-based Hemangioblast (HG) platform for the treatment of blood and cardiovascular diseases. Advanced Cell is further focused on advancing its Phase 2-approved Myoblast autologous adult stem cell therapy for the treatment of chronic heart failure, advanced cardiac disease, myocardial infarction, and ischemia. Rabin Declaration ¶ 3.

Advanced Cell owns or licenses more than 150 patents and patent applications related to stem cell therapy and regenerative medicine. It recently secured a patent on its "embryo-safe" single-blastomere technology and in June of 2010 secured a broad patent for production of RPE cells. Rabin Declaration ¶ 4.

Advanced Cell's common stock is listed and trades publicly on the Over-the-Counter Bulletin Board, under ticker symbol "ACTC.OB," and its common stock closed on September 28, 2011, at $0.1501 per share. Rabin Declaration ¶ 5.

Contrary to the allegations in the Motion, Advanced Cell is not at all insolvent. *See* Rabin Declaration ¶ 12. ("The Company is able to pay its financial obligations as they come due, and closed the June 2011 quarter with over $16 million cash on hand, virtually no debt, and loses only approximately $3 million on an operating cash basis per quarter. Additionally, at June 30, 2011, ACT had at its disposal $17 million in an available, but undrawn equity financing commitment from a highly respected biotechnology investment fund"); *id*. ¶ 13 ("Advanced Cell's market capitalization (based upon the September 28, 2011 closing price) of approximately

$248 million reflects investors' confidence in Advanced Cell's viability and potential for growth.").

**B.     Advanced Cell's Transactions With JMJ Financial**

Between February 2008 and March 2010, Advanced Cell entered into several financing transactions with JMJ Financial, Inc. ("JMJ"), pursuant to which Advanced Cell issued to JMJ a total of nine convertible promissory notes.  Rabin Declaration ¶ 6.  The total face amount of the notes was $11,302,000.  Pursuant to the convertible promissory notes, JMJ was entitled to convert all or part of the notes into shares of Advanced Cell's common stock at specified conversion rates.  The specified conversion rates differed from note to note; in each instance the rate was the lesser of (a) a preset price of at least $0.10 per share and (b) 85% of the average of the three lowest trade prices of Advanced Cell's stock in the 20 trading days prior to the conversion.  *Id.*

As reflected in Exhibit I to the affirmation of Konrad Ackermann, dated September 14, 2011, Advanced Cell disclosed the JMJ financings (including the conversion rates) publicly in its filings with the Securities & Exchange Commission ("SEC"), most recently in March 2011.

At various times, JMJ exercised its right to convert portions of the principal amount of the notes into shares of Advanced Cell's common stock.  Rabin Declaration ¶ 7.  Notwithstanding the language of the notes issued to JMJ, *all conversions of principal amounts of the notes were at the conversion rate of $0.10 per share*.  Rabin Declaration ¶ 7.  As the parties agreed, in writing:

> JMJ agrees that as long as it remains practical, it will continue to convert at $0.10 per share, as long as the [Company] continues to make whole on any loss on conversion (the "Conversion Loss") at $0.10 that should have occurred below $0.10 per share, as follows:
>
> > The [Company] will make whole on the Conversion Loss by adding the Make Whole Amount to the balance of the note.  The Make Whole Amount will be calculated as set forth below.  Any such Make Whole Amount will automatically be added to the balance of the Note (under [the Company's] and [JMJ's] expectation that any make

>whole amounts will tack back to the original date of the note).
>
>Make Whole Amount = ($0.10 – Conversion Price) x number of shares being converted

*See* Rabin Declaration, Ex A.  Thus, in the event 85% of the average of the three lowest trade prices of Advanced Cell's stock in the twenty trading days prior to the conversion was less than $0.10, the conversion was still done at a rate of $0.10 per share and the principal amount of the note was increased by an amount equal to the difference between conversion at $0.10 per share and conversion at the lower rate.

JMJ was entitled to convert the additional principal on the same terms as the original principal.  Rabin Declaration ¶ 8.  Of course, there would be no way to know at the time the principal was increased whether the price of Advanced Cell stock at the time of a later conversion of the additional principal would be above or below the lesser of $0.10 per share or 85% of the average of the three lowest trade prices of Advanced Cell's stock in the twenty trading days prior to the conversion.  Id.

**C.**     <u>**Alpha Capital Files The Instant Action**</u>

On or about September 14, 2011, Plaintiff filed the instant action.  According to the Complaint, Plaintiff owns warrants in Advanced Capital that contain an initial exercise price of $0.108 per share and convertible notes that contain an initial exercise price of $0.10 per share.  Plaintiff alleges that these initial exercise prices were subject to downward adjustment in the event that Advanced Cell issued shares, or securities convertible into shares, at a price that was lower than the initial Alpha exercise and conversion prices, or $0.10.  Plaintiff alleges that by reason of the transactions between Advanced Cell and JMJ described above, the exercise and conversion prices in its convertible notes and warrants should have been reset.  Plaintiff alleges that Advanced Cell was obligated to immediately notify it and to reduce the exercise and conversion prices of its warrants and notes to such new lower price and to increase the number of shares covered by the warrants in accordance with an agreed upon formula.  Based on these allegations, Plaintiff filed the Motion, demanding a preliminary and permanent injunction

directing Advanced Cell to deliver to it at least 39,514,859 shares of its common stock, as well as monetary damages in an amount to be determined at trial.

## III.

## ARGUMENT

### A. The Heightened Applicable Standard

A preliminary injunction is an extraordinary remedy that should not be granted routinely. *Fireman's Ins. Co. of Newark v. Keating,* 753 F. Supp. 1146, 1149 (S.D.N.Y. 1990) (quoting *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990)). To obtain a preliminary injunction, the moving party must show (1) that it is likely to suffer irreparable harm without the requested relief and (2) either (i) a likelihood of success on the merits; or (ii) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *CRP/Extell Parcel I, LP v. Cuomo,* 394 Fed. Appx. 779, 781 (2d Cir. 2010); *see also Passlogix, Inc. v. 2FA Technology, LLC,* 08 Civ. 10986 (PKL), 2010 WL 2505628, at *7 (S.D.N.Y. June 21, 2010); *Clear Channel Outdoor, Inc. v. City of New York,* 608 F. Supp. 2d 477, 492 (S.D.N.Y. 2009). The standard for preliminary declaratory relief is the same as that for a preliminary injunction. *Merrill Lynch v. John M. Doe,* 868 F. Supp. 532, 536 (S.D.N.Y. 1994).

Moreover, in the case of a mandatory injunction, where (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits, a heightened standard applies and the movant must show a "clear" or "substantial" likelihood of success on the merits. *See Levola v. Fischer*, 403 Fed. Appx. 564, 565 (2d Cir. 2010); *see also Hardy v. Fisher,* 701 F. Supp. 2d 614, 618 (S.D.N.Y. 2010); *Clear Channel Outdoor, Inc.,* 608 F. Supp. 2d at 492 ("The party seeking the injunction must show a clear or substantial likelihood of success where the injunction sought is mandatory – i.e. it will alter,

rather than maintain, the status quo"). Here, Plaintiff is seeking a mandatory injunction because it is seeking the transfer to Plaintiff of "at least 39,514,859 shares of its common stock pursuant to the terms of the [Advanced Cell] Warrants and Convertible Promissory Notes held by Alpha Capital." Consequently, a heightened standard applies to the Motion.

**B.    Alpha Is Not Entitled To Injunctive Relief Because Any Alleged Harm Is Compensable By An Award Of Money Damages**

A showing of irreparable harm is the single most important element in the injunction analysis. *See Bell & Howell: Mamiya Co. v. Masel Supply Co.,* 719 F.2d 42, 45 (2d Cir. 1983). As such, whether the movant will suffer irreparable harm must be adequately established before the court addresses the merits of the movant's injunction request. *See, e.g., Material Handling Products Corp. v. Nacco Materials Handling Group,* 1:11-cv-0118, 2011 WL 1205064, at *3 (N.D.N.Y. March 28, 2011) ("Having concluded that Plaintiff has failed to establish a likelihood of irreparable harm if the requested relief is denied, the Court need not, and does not, address Plaintiff's probability of success on the merits"). Indeed, the threat of irreparable injury is a "*sine qua non* of a preliminary injunction: If there is no irreparable injury, there can be no preliminary injunction." *Passlogix,* 2010 WL 2505628, at *7; *see also Warren Pearl Construction Corporation v. Guardian Life Insurance Company of America,* No. 08 Civ. 9445(WHP), 2008 WL 5329962, at *2 (S.D.N.Y. Dec. 9, 2008) (holding that it is well established in the Second Circuit that the irreparable harm requirement is the single most important prerequisite for the issuance of a preliminary injunction).

It is equally well established that a party cannot demonstrate irreparable harm when the harm it faces is compensable by an award of money damages. *Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir. 2002). Here, Plaintiff cannot demonstrate irreparable harm because the harm it faces — the non-delivery of additional shares — is compensable by an award of money damages. For this reason alone, the Motion should be denied.

In an attempt to avoid the consequences of the rule that irreparable harm is not present when the alleged injury is compensable by money damages, Plaintiff alleges that Advanced Cell is insolvent. Memo of Law at 13. However, the Second Circuit has held that in order to advance a risk of insolvency as irreparable harm, "a movant must show that the risk of insolvency is *likely and imminent*." *CRP/Extell Parcel I, L.P. v. Cuomo,* 394 Fed. Appx. 779, 782 (2d Cir. 2010) (emphasis added). *See also Zugsmith, et al. v. Davis, et al.,* 108 F. Supp. 913, 915 (S.D.N.Y. 1952) (holding that the mere expression of fear and apprehension of irreparable injury is not a sufficient basis for granting injunctive relief).

Here, Plaintiff falls far short of establishing that Advanced Cell's insolvency is "likely and imminent." Indeed, not only is the argument that Advanced Cell will be unable to satisfy a potential judgment nothing more than speculation (which is not a sufficient basis for granting injunctive relief), but it is belied by the facts. *See* Rabin Declaration ¶ 12. ("The Company is able to pay its financial obligations as they come due, and closed the June 2011 quarter with over $16 million cash on hand, virtually no debt, and loses only approximately $3 million on an operating cash basis per quarter. Additionally, at June 30, 2011, ACT had at its disposal $17 million in an available, but undrawn equity financing commitment from a highly respected biotechnology investment fund"); *id.* ¶ 13. (" Advanced Cell's market capitalization (based upon the September 28, 2011 closing price of its common stock) of approximately $248 million reflects investors' confidence in Advanced Cell's viability and potential for growth.").[1]

---

[1] To lend support to its claim that Defendant will not be able to satisfy a money judgment, Plaintiff cites to *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.,* 09 Civ. 670, a case filed by Alpha against Advanced Cell in 2009. However, that case is easily distinguishable because, as reflected in the pleadings filed in that case (which Plaintiff conveniently ignored), at the time of that action, Advanced Cell was not current in its reporting requirements with the SEC and had provided no detail as to its financial health. *See* Affidavit of William Caldwell at 2, *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.,* 09 Civ. 670, Dkt. No. 11. That is simply not the case here, as is

In a further attempt to overcome the significant hurdle presented by the fact that its claims, if successful, could be satisfied by a monetary award, Plaintiff appears to argue that its damages would be difficult to ascertain. However, Defendant is a publicly traded company, and the price of its stock at any given moment is readily ascertainable. *See, e.g., Morgan Stanley & Co. v. Archer Daniels Midland Co.*, 570 F. Supp. 1529, 1534 (S.D.N.Y. 1983) ("The ADM Debentures are traded nationally and while the market is rather limited, there appears to be no impediment to introducing historical data on market trends in these or similar securities for purposes of ascertaining damages."); *Western Inv. LLC v. DWS Global Commodities Stock Fund, Inc.*, 705 F. Supp. 2d. 281, 286 (S.D.N.Y. 2010) (holding that plaintiff failed to demonstrate irreparable harm and that a decline in value of shares as a result of an investment change was compensable through money damages). Notably, Plaintiff does not cite a single case in support of its argument that it is difficult to quantify losses arising from a failure to deliver shares.[2] Instead, to support its argument that damages would be difficult to calculate, Plaintiff claims that it "would have caused Alpha Capital to exercise its Warrants and convert its Convertible Notes at different times than it in fact did." Memo of Law at 15. However, the fact that Plaintiff cannot recover such speculative damages, *see, e.g., ESPN, Inc. v. Office of the Comm'r of Baseball,* 76 F. Supp. 2d 416, 418 (S.D.N.Y. 1999) (holding that a plaintiff cannot recover damages that are based on conjecture), is irrelevant. The relevant point is that *if* Plaintiff would be entitled to damages, Plaintiff could be compensated by a monetary award.

---

demonstrated by the Rabin Declaration. Indeed, in contrast to the situation at the time of that earlier action, Advanced Cell is current in its reporting requirements and its most recent Form 10-K reflects a "clean" audit opinion by its independent auditors. Rabin Declaration ¶ 11.

[2] Plaintiff cites *Ticor Title Insurance Co. v. Cohen,* 173 F.3d 63, 69 (2d Cir. 1999) for the proposition that the inability to calculate damages equals irreparable harm. However, *Ticor* is inapposite because it involved the unique services of an employee and his value to his employer. *See Ticor Title Ins. Co.*, 173 F.3d at 70.

Alpha also attempts to establish irreparable injury by relying on a provision in its Subscription Agreement with Advanced Cell that states that irreparable harm will occur in the event of a breach.[3] However, Plaintiff's reliance on this provision is misplaced for two reasons. First, Plaintiff has not and will not establish any breach of the agreement. Second, "it is clear that the parties to a contract cannot, by including certain language in that contract, create a right to injunctive relief where it would otherwise be inappropriate." *Fireman's Ins. Co. of Newark,* at 1154; *see also Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1266 (10th Cir. 2004); *Life Techs. Corp. v. AB Sciex Pte. Ltd.,* 99 U.S.P.Q.2d 1785 (S.D.N.Y. 2011) (holding, in denying plaintiff's motion for a preliminary injunction, that contractual language declaring money damages inadequate in the event of a breach does not control the question of whether preliminary injunctive relief is appropriate).[4]

For the foregoing reasons, Plaintiff has failed to demonstrate that it will be irreparably harmed if the Motion is denied, and this Court need not even address the merits of the parties' underlying dispute. *See Passlogix,* 2010 WL 2505628, at *7 ("Having concluded that [the movant] cannot 'meet its burden demonstrating a likelihood of irreparable harm if the requested

---

[3] The quoted provision states:

13(b) <u>Specific Enforcement, Consent to Jurisdiction.</u>  The Company and Subscriber acknowledge and agree that irreparable harm would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached.

[4] The single Delaware case that Plaintiff cites in support of its argument that money damages are not an adequate remedy for the failure of a corporation to meet its obligations under the terms of its securities, *Halifax Fund, L.P. v. Response USA, Inc.,* 1997 WL 33173241 (Del. Ch. May 13, 1997), is inapposite because it concerned a motion for partial summary judgment and a security holder's *unconditional* right to convert preferred stock to common stock. *Id.* at *2. By contrast, here, the alleged obligation was not triggered unless Defendant issued shares at a price lower that the applicable exercise and conversion prices. As set forth in the Rabin Declaration, that did not occur.

relief is denied,' the Court need not consider the likelihood of success on the merits or the balance of equities.") (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 152-3 (2d. Cir. 2007)).

C. **Assuming *Arguendo* That Plaintiff Somehow Establishes That Its Damages Could Not Be Compensated By A Monetary Award, Plaintiff Cannot Establish A Clear And Substantial Likelihood Of Success On The Merits**

Even assuming that this Court finds that Plaintiff is somehow likely to suffer irreparable injury if injunctive relief is denied, Plaintiff must also demonstrate either: (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, with the balance of hardships tipping decidedly in the movant's favor. *Hardy v. Fischer,* 701 F. Supp. 2d 614, 618 (S.D.N.Y. 2010).[5] Plaintiff correctly acknowledges that it must also make a showing of *substantial* likelihood of success, but incorrectly asserts that its "likelihood of success at trial is not merely substantial but virtually assured."

The crux of Plaintiff's allegations are that: (a) Advanced Cell issued shares at a price of $0.0353 to JMJ Financial, Inc., and (b) this lower priced issuance obligated Advanced Cell to notify Plaintiff, to lower Plaintiff's exercise and conversion prices of its warrants and convertible notes, and to increase the number of shares covered by the warrants.

However, Plaintiff's claim is belied by the explicit terms of the agreements at issue, because the relevant provisions of those agreements provide that Plaintiff's exercise and conversion prices shall only be lowered if Advanced Cell "*shall issue* any Common Stock . . . for a consideration less than" (emphasis added) the exercise and conversion prices of the Warrants and Convertible Notes held by Alpha Capital.  *See* Warrant ¶ 3.3; Convertible Notes ¶ 3.3 Plaintiff's warrants contained an initial exercise price of $0.108 per share and the convertible

---

[5] Plaintiff makes no argument that it is proceeding under the prong in which it would need to demonstrate sufficiently serious questions going to the merits to make them a fair ground for litigation, with the balance of hardships tipping decidedly in its favor.

notes contained an initial exercise price of $0.10 per share. Memo of Law at 6. As explained in the Rabin Declaration, Advanced Cell has not issued any common stock for a consideration of less than $0.10 per share. Rabin Declaration ¶ 7.

In sum, the purported notification and adjustment obligations were not triggered by the JMJ transaction. Accordingly, under any standard of review, Alpha falls short of establishing a likelihood of success on the merits in this matter.

Plaintiff is also unable to establish a likelihood of success on the merits because, as explained above, its theory of recovery is premised on speculation and guess-work concerning, among other things, when it might have sold its shares and at what price. With no first hand knowledge of the actual transaction between Advanced Cell and JMJ, Plaintiff arrived at the reduced issuance price of $0.0353 by "dividing the 76,465,706 shares reportedly issued by ACTI to JMJ by the $3,562,215 reportedly paid by JMJ for those shares and then applying the original issue discount of 22% applicable to the JMJ convertible debentures." (Ackerman Affirmation p. 9). As stated above, all JMJ conversions of principal amounts of the notes were done at the conversion rate of $0.10 per share. Rabin Declaration ¶ 7.

Based on the foregoing, Alpha has not demonstrated a substantial likelihood of success on the merits.[6]

---

[6] While Plaintiff cites to cases in which courts have granted preliminary injunctions and compelled corporations to deliver shares in accordance with their contractual obligations, each of these cases, three of which are not published opinions and do not provide the necessary relevant background, is easily distinguishable. In both *Celeste Trust Reg. and Esquire Trade & Finance, Inc. v. Greystone Digital Technology, Inc.,* 01 Civ. 91 (CBM) and *Alpha Capital Aktiengesellschaft et al. v. Group Management Corp.,* 2002 WL 31681798 (S.D.N.Y. Nov. 25, 2002) the court granted preliminary injunctions directing the defendant to issue stock in accordance with the terms of an *unconditional* contractual obligation. By contrast, here, Advanced Cell's obligation to lower the exercise and conversion prices of the warrants and convertible notes and to increase the number of shares covered by the warrants was only triggered if Advanced Cell issued shares at a price lower than the exercise and conversion prices applicable to Alpha. Advanced Cell did not issue shares at such a lower price. In addition,– *Alpha Capital Aktiengesellschaft*

D. **The Motion Should Also Be Denied Because Compliance With Alpha's Proposed Preliminary Injunction Would Be Impracticable And Alpha's Request is Impermissibly Vague.**

Plaintiff has asked this Court to order Defendant to deliver 39,514,859 shares of stock. However, Defendant cannot immediately issue 39,514,859 shares of stock to Plaintiff because, as explained in the Rabin Declaration, if the injunction is granted, it is likely to set off a "chain reaction" of events that may lead to the ultimate destruction of Advanced Cell. Rabin Declaration ¶ 17. ("The harm to the Company and its employees from a wrongfully imposed injunction is potentially 'life-threatening' to the corporation and cannot be undone"). More specifically, as of September 26, 2011, Advanced Cell had a total of 1,640,644,900 shares outstanding and held by shareholders. Rabin Declaration ¶ 16. It has another 109,355,100 of authorized shares. Rabin Declaration ¶ 16. Of that number, 20,062,955 are reserved for vested and in-the-money employee stock options and 66,222,351 are reserved for holders of convertible notes, convertible preferred stock and warrants in the event they exercise their conversion rights based upon the notes' and warrants' respective face values. Rabin Declaration ¶ 16. This leaves 23,069,794 authorized shares available for all other purposes. In the event all holders of convertible notes and warrants issued by Advanced Cell similarly situated to plaintiff were to file substantially similar actions based upon substantially similar claims and allegations, Advanced Cell would not have enough uncommitted authorized shares available to satisfy in full all such claims. Rabin Declaration ¶ 16.[7] Where, as here, enforcing a preliminary injunction would be

---

*v. Advanced Viral Research Corp.,* 2003 WL 328302 (S.D.N.Y. Feb. 11, 2003) and *Longview Special Finance v. Infinium Labs, Inc.,* 06 Civ. 1772 - each dealt with a defendant who, at the time of the ruling, was unlikely to be able to pay money damages at the end of the litigation. That is not the case here. *See* Rabin Declaration ¶¶ 12-13.

[7] In addition, pursuant to Delaware law, Advanced Cell could not create additional authorized shares without convening a meeting of the shareholders and taking a shareholder vote, a process which by no means assures that the creation of necessary authorized shares could be accomplished. 8 Del. C. § 242(b)

impracticable, it should not be granted as "that which is impossible equity refuses to decree." *Southex Trading Co. v. Piankay Realties,* 59 N.Y.S.2d 362, 365 (N.Y. Sup. 1946); *see also Bano v. Union Carbide Corp.,* 361 F.3d 696, 716 (2d Cir. 2004) (holding that there was no abuse of discretion in the district court's conclusion that an injunction would be impracticable).

In addition, Plaintiff's request must also be denied because it is impermissibly vague. Plaintiff requests that an order should be entered directing Advanced Cell to deliver "*at least*" 39,514,859 shares of its common stock. However, Federal Rule of Civil Procedure 65(d) states that "every order granting an injunction . . . shall be specific in terms; shall describe in reasonable detail . . . the act or acts sought to be restrained." Fed. R. Civ. P. 65(d). The Rule "reflects Congress' concern with the dangers inherent in the threat of a contempt citation for violation of an order so vague that an enjoined party may unwittingly and unintentionally transcend its bounds." *Corning Incorporated v. PicVue Electronics, Ltd.,* 365 F.3d 156, 158 (2d Cir. 2004); *see also Brodzki v. State of Nebraska,* 2011 BL (D. Neb. June 23, 2011) (ruling that "a broad and vague request is not within the court's power to grant").

In sum, the relief in the Motion would be impracticable to enforce and the request for relief is impermissibly vague in any event. Therefore, the Motion should be denied.

E. **If An Injunction Is Granted, Plaintiff Should Be Required To Post A Bond**

Federal Rule of Civil Procedure 65(c) provides:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

The Second Circuit holds that, except in extraordinary circumstances which are not applicable here, courts must not order a preliminary injunction unless the applicant posts a bond. *See Doctor's Assocs., Inc. v. Distajio,* 107 F.3d 126, 136 (2d Cir. 1997) *cert. denied,* 522 U.S. 948 (1997). *Nokia Corp. v. InterDigital, Inc.,* 645 F.3d 553, 557 (2d Cir. 2011) ("[s]ince a

-13-

preliminary injunction may be granted on a mere probability of success on the merits, generally the moving party must demonstrate confidence in his legal position by posting bond in an amount sufficient to protect his adversary from loss in the event that future proceedings prove that the injunction issued wrongfully") (citing *Edgar v. MITE Corp.,* 457 U.S. 624, 649 (1982)).

As explained above and in the Rabin Declaration, the harm that Advanced Cell would suffer if the Court grants the Motion will be severe,   Specifically, if the injunction is granted, it is likely to set off a "chain reaction" of events that may lead to the ultimate destruction of Advanced Cell  Rabin Declaration ¶ 17.  Other holders of convertible notes and warrants are likely to commence a "run on the bank," worried that if they do not pursue their claims fast enough no more authorized shares will be left in Advanced Cell's treasury to satisfy their claims. When the authorized shares run out, not only will slower holders of notes and warrants be "left holding the bag," but Advanced Cell's loyal employees also will be unable, through no fault of their own, to exercise their stock options.  At that point in time, Advanced Cell will be under attack from all sides, hemorrhaging cash to defend against a barrage of lawsuits.  That cash eventually will run out, and no new investor is likely to come in with new funds while these claims are pending.  The harm to Advanced Cell and its employees from a wrongfully imposed injunction is potentially "life-threatening" to the corporation and cannot be undone.  Rabin Declaration ¶ 17.

While there is no specific formula for determining the amount of the bond, it must be sufficient to "guarantee payment of costs and damages incurred by a party who is wrongfully enjoined or restrained." *Interlink Int'l Fin. Svcs., Inv. v. Block,* 145 F.Supp.2d 312, 314 (S.D.N.Y. 2011).

The potential harm from the injunction simply is impossible to quantify.  Defendant therefore, requests that if the Court grants the relief requested in the motion, the Court require

Plaintiff to post a bond in the amount of the current market value of 39,514,859 shares of Advanced Cell's common stock, or approximately $6.3 million.. *See Alpha Capital Atiengesellschaft v. Advanced Viral Research Corp.,* No. 02 CV 10237, 2003 WL 328302, at *6 (S.D.N.Y. Feb. 11, 2003) (in an action by Plaintiff herein seeking a preliminary injunction on behalf of holders of stock warrants, the court ordered the posting of a bond).

## IV.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's Motions.

DATED:   New York, New York
         September 30, 2011

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By:  /s/ Daniel L. Brown
     Daniel L. Brown (DB 0906)

     Sheppard, Mullin, Richter & Hampton LLP
     30 Rockefeller Plaza
     New York, NY 10112
     (212) 653-8700

     *Attorney for Defendant Advanced Cell Technology, Inc.*