United States District Court
Southern District of New York
-------------------------------------------------------x
Alpha Capital Anstalt,

                    Plaintiff,

        v.                                          Affirmation

Advanced Cell Technology, Inc.,

                    Defendant.
-------------------------------------------------------x


        Konrad Ackermann hereby affirms under penalty of perjury under the laws of the United

States of America:


        I am a director of Plaintiff Alpha Capital Anstalt ("Alpha Capital"). I submit this

affirmation in support of Alpha Capital's motion for a preliminary injunction and preliminary

declaratory relief directing Defendant Advanced Cell Technology, Inc. ("ACTI") to deliver

immediately at least 39,514,859 shares of its common stock to Alpha Capital pursuant to the

terms of the ACTI Warrants (the "Warrants") and Convertible Promissory Notes (the

"Convertible Notes") held by Alpha Capital. ACTI, as hereafter set forth, has failed in its

undisputable contractual obligation to deliver such shares of common stock to Alpha Capital.

Thus Alpha Capital has an overwhelming likelihood of success on the merits of its claims.


        Absent the requested injunctive relief, Alpha Capital will suffer irreparable harm. First,

ACTI agreed in writing at the time Alpha Capital purchased the Convertible Notes and Warrants

that Alpha Capital would be entitled to the requested injunctive relief to remedy ACTI's

aforementioned breaches of its contractual obligations. Further, given ACTI's undisputed financial circumstances - it is bankrupt, with a substantial negative net worth, with substantial accumulated and continuing operational losses - ACTI is incapable of responding to any damages award for Alpha Capital at the end of a lengthy litigation. ACTI, has a negative net worth of over $6 million, has accumulated losses of almost $190 million, to date has never earned a profit from its operations and does not expect any material revenues for the foreseeable future. Likely inability to pay any damages award at the end of the litigation, I am informed, constitutes irreparable harm supporting an award of the requested equitable relief. Unless this Court awards the requested injunctive relief, therefore, it is highly unlikely that Alpha Capital will receive any redress for ACTI's clear breach of its agreements with Alpha Capital.

Based upon its public filings, as hereafter set forth, ACTI continues in business only because it continues to raise new investment funds by selling new securities to new investors and admittedly pays many of its existing obligations in stock. It would be highly inequitable, Alpha Capital submits, for ACTI to continue issuing its securities to pay existing debts and raise new funds while depriving Alpha Capital of the securities which ACTI is contractually obligated to deliver to Alpha Capital, thereby requiring Alpha Capital to wait until the end of the litigation to obtain a damages judgment which will likely never be paid. I have personal knowledge of the matters set forth herein.

Immediate injunctive relief is also required because ACTI is rapidly running out of authorized shares to deliver to Alpha Capital. Based upon ACTI's public filings, it had

approximately160 million authorized but unissued shares on July 29, 2011.[1] Since that time, based upon its public filings, it has issued or committed to issue another 110 million shares.[2] Thus only 50 million shares are now available for issuance to Alpha Capital and others. ACTI, as noted above, continues to pay down its debts using stock, thereby further depleting the shares available to deliver to Alpha Capital.

Alpha Capital also seeks an immediate Court Order requiring ACTI to respond to the one Interrogatory herein propounded by Alpha Capital. That Interrogatory (Exhibit D) requests ACTI to list each stock issuance by ACTI, including stock issued upon conversion or exercise of any convertible securities or warrants, since November 12, 2009 and the price at which the stock was issued. Under the terms of the agreements between ACTI and Alpha Capital, as hereafter set forth, the Exercise Price (the "Exercise Price"[3]) of the Warrants and the Fixed Conversion Price (the "Conversion Price") of the Convertible Notes held by Alpha Capital were to be reduced whenever ACTI issued stock at a price lower than the then applicable Exercise and Conversion Prices. ACTI, upon the issuance of such stock at the lower price, was also obligated to increase the number of shares covered by the Warrants and into which the Convertible Notes were

---

[1]In its form 10-Q filed on August 4, 2011 (Exhibit A), ACTI reported authorized shares of 1.75 billion and issued shares of 1.59 billion, leaving 160 million shares available for issuance to Alpha Capital and others.

[2]In two separate prospectuses filed on August 29, 2011 (Exhibit B), ACTI committed a total of almost 84 million shares to others. In its settlement with Midsummer Capital in the beginning of August, 2011 (Exhibit C), ACTI reported issuing 36 million shares.

[3]The Warrants and the Subscription Agreement refer, interchangeably, to the price at which Alpha Capital can exercise its Warrants as the "Purchase Price" and the "Exercise Price." For clarity of presentation that price is referred to herein as the "Exercise Price."

3

convertible in accordance with an agreed upon formula. Alpha Capital has exercised its Warrants and converted its Convertible Notes subsequent to events which required the reduction of the Exercise and Conversion Prices. It is the additional shares to which Alpha Capital was entitled upon such subsequent exercises and conversions, based upon the reduced Exercise and Conversion Prices which Alpha Capital seeks herein. ACTI was contractually obligated to notify Alpha Capital upon the occurrence of each such event which mandated a reduction in the Exercise and Conversion Prices and the delivery of additional shares. ACTI has failed to comply with its contractual disclosure obligation. Alpha Capital, therefore, seeks Court assistance to compel such compliance.

Based upon ACTI's public filings, it appears that the currently applicable Exercise and Conversion Price is $0.0353, at which price ACTI is obligated to deliver 39,514,859 shares of its common stock to Alpha Capital. It is highly likely, however, because ACTI's public disclosures have not been sufficiently detailed in this regard, that there have been stock issuances by ACTI at prices lower than $0.0353 which would obligate ACTI to deliver to Alpha Capital more than 39,514,859 shares of common stock. Alpha Capital believes that ACTI was intentionally vague in its public filings about the exact prices at which it issued shares to avoid its obligations to Alpha Capital and the other investors in ACTI Warrants and Convertible Notes. Under the circumstances, given ACTI's utter disregard of its obligation to notify Alpha Capital as aforesaid, a court order is required to compel ACTI to divulge the specific price and share issuance information, in accordance with its obligation to do so. It is only with that information that Alpha Capital can be certain that it is receiving the proper number of shares from ACTI.

4

the parties

Alpha Capital is a Liechtenstein corporation with its principal place of business in Vaduz, Liechtenstein. Upon information and belief, ACTI is a Delaware corporation with its principal place of business in Marlborough, Massachusetts and with a place of business in Santa Monica, California. In the Warrants, the Convertible Notes and in the Subscription Agreement pursuant to which Alpha Capital purchased the Warrants and the Convertible Notes, the parties agreed to the exclusive jurisdiction of the federal and state courts in New York in which to bring any lawsuits and that New York law governs.[4]

factual background

On or about November 12, 2009, Alpha Capital purchased from ACTI a $720,000 face amount Convertible Note (Exhibit E) for $600,000 and a Warrant (Exhibit F) to purchase 4,877,000 shares of ACTI common stock. The purchase was made pursuant to the terms of the Subscription Agreement dated November 12, 2009 (Exhibit G). On or about February 18, 2010, in a closing on the second tranche of the investment pursuant to the Subscription Agreement, Alpha Capital purchased another $720,000 face amount Convertible Note (Exhibit E) and another Warrant (Exhibit F) to purchase 4,788,000 shares of ACTI common stock. Other investors also purchased ACTI's Warrants and Convertible Notes at the same times that Alpha

---

[4] See §5(f) of the Warrants, §5.6 of the Convertible Notes and §13(d) of the Subscription Agreement.

Capital made its purchases. Alpha Capital invested less than half of all of the funds invested by

all investors to purchase Warrants and Convertible Notes pursuant to the November, 2009

Subscription Agreement. Alpha Capital also holds ACTI Warrants (Exhibit F) which Alpha

Capital acquired in connection with investments in ACTI in 2005 and 2006.[5]

The Warrants could be exercised by Alpha Capital, in whole or in part, at any time and

from time to time, at its option, during the term of the Warrants, to obtain ACTI common shares.

The Convertible Notes, similarly, provided that Alpha Capital, at any time and from time to time,

at its option, could convert all or part of the Convertible Notes into shares of ACTI common

stock upon submission of a Conversion Notice (Convertible Notes, ¶3.1(a)). The Warrants

contained an initial Exercise Price of $0.108 per share (Warrants, p. 1).[6] The Convertible Notes

contained an initial exercise price of $0.10 per share (Convertible Notes, ¶3.1(c)).

In order to induce Alpha Capital to purchase the ACTI securities, ACTI agreed that the

initial Exercise Price of the Warrants and the initial Conversion Price of the Convertible Notes

were subject to downward adjustment in the event ACTI thereafter issued shares, or securities

convertible into shares, at a price that was lower than the initial Exercise and Conversion Prices.

In that event, ACTI was obligated to reduce the Exercise and Conversion Prices of Alpha

---

[5]The Subscription Agreement pursuant to which Alpha Capital acquired the 2005 and
2006 Warrants were identical, in all material respects, to the 2009 Subscription Agreement for
purposes of this Court deciding this motion.

[6]The 2005 and 2006 Warrants had an initial Exercise Price of $2 which was reduced to
$0.108 when Alpha Capital purchased the Convertible Notes and Warrants in 2009.

Capital's Warrants and Notes to such lower price (Warrants, ¶3.3; Convertible Notes ¶3.1(c)D)

and to increase the number of shares covered by the Warrants in accordance with an agreed upon

formula. The provisions of the Warrants and the Convertible Notes requiring such downward

adjustment of the Exercise and Conversion Prices and the increase in the number of shares

covered by the Warrants are set forth in the footnote.[7]

---

[7]Warrant ¶3.3: <u>Share Issuance</u>. Until the Expiration Date, if the Company shall issue any Common Stock . . . prior to the complete exercise of this Warrant for a consideration less than the Purchase Price [Exercise Price] that would be in effect at the time of such issue, then, and thereafter successively upon each such issue, the Purchase Price [Exercise Price] shall be reduced to such other lower price for the then outstanding Warrants. For purposes of this adjustment, the issuance of any security or debt instrument of the Company carrying the right to convert such security or debt instrument into Common Stock or of any warrant, right or option to purchase Common Stock shall result in an adjustment to the Purchase Price [Exercise Price] upon the issuance of the above described security, debt instrument, warrants, right, or option if such issuance is at a price lower than the Purchase Price [Exercise Price] in effect upon such issuance and again at any time upon any subsequent issuances of shares of Common Stock upon exercise of such conversion or purchase rights if such issuance is at a price lower than the Purchase Price [Exercise Price] in effect upon such issuance . . . Upon any reduction of the Purchase Price [Exercise Price], the number of shares of Common Stock that the Holder of this Warrant shall thereafter, on the exercise hereof, be entitled to receive shall be adjusted to a number determined by multiplying the number of shares of Common Stock that would otherwise (but for the provisions of this Section 3.3) be issuable on such exercise by a fraction of which (a) the numerator is the Purchase Price [Exercise Price] that would otherwise (but for the provisions of this Section 3.3) be in effect, and (b) the denominator is the Purchase Price [Exercise Price] in effect on the date of such exercise.

Convertible Notes ¶3.1(c)D: <u>Share Issuance</u>. So long as this Note is outstanding, if the Borrower shall issue any Common Stock . . . prior to the complete conversion or payment of this Note, for a consideration per share that is less than the Fixed Conversion Price that would be in effect at the time of such issue, then, and thereafter successively upon each such issuance, the Fixed Conversion Price shall be reduced to such other lower issue price. For purposes of this adjustment, the issuance of any security or debt instrument of the Borrower carrying the right to convert such security or debt instrument into Common Stock or of any warrant, right or option to purchase Common Stock shall result in an adjustment to the Fixed Conversion Price upon the issuance of the above described security, debt instrument, warrant, right, or option and again upon the issuance of shares of Common Stock upon exercise of such conversion or purchase rights if such issuance is at a price lower than the then applicable Fixed Conversion Price.

ACTI was also required to notify Alpha Capital promptly of any event which required a downward modification of the Exercise and Conversion Prices and a commensurate increase in the number of shares covered by the Warrants and Convertible Notes. ACTI was obligated to provide Alpha Capital with a statement setting forth the consideration ACTI received for the additional shares issued, the number of shares of ACTI common stock outstanding and the Exercise Price and the number of shares to be received upon exercise of the Warrants with the reduced Exercise Price (Warrants, ¶5; Convertible Notes, ¶3.1(d)).[8] Since Alpha Capital's purchase of the Warrants and Convertible Notes in November, 2009, ACTI has never notified Alpha Capital that the Exercise and Conversion Price of the Warrants and the Convertible Notes has been reduced. Nor has ACTI ever provided the calculation of the increased number of shares which the Warrants covered.

---

[8]Warrants ¶5: "Certificate as to Adjustments. In each case of any adjustment or readjustment in the shares of Common Stock (or Other Securities) issuable on the exercise of the Warrants, the Company at its expense will promptly cause its Chief Financial Officer or other appropriate designee to compute such adjustment or readjustment in accordance with the terms of the Warrant and prepare a certificate setting forth such adjustment or readjustment and showing in detail the facts upon which such adjustment or readjustment is based, including a statement of (a) the consideration received or receivable by the Company for any additional shares of Common Stock (or Other Securities) issued or sold or deemed to have been issued or sold, (b) the number of shares of Common Stock (or Other Securities) outstanding or deemed to be outstanding, and (c) the Purchase Price and the number of shares of Common Stock to be received upon exercise of this Warrant, in effect immediately prior to such adjustment or readjustment and as adjusted or readjusted as provided in this Warrant. The Company will forthwith mail a copy of each such certificate to the Holder of the Warrant and any Warrant Agent of the Company (appointed pursuant to Section 11 hereof)."

Convertible Notes ¶3.1(d): "Whenever the Conversion Price is adjusted pursuant to Section 3.1 (c) above, the Borrower [ACTI] shall promptly mail to the Holder a notice setting forth the Conversion Price after such adjustment and setting forth a statement of the facts requiring such adjustment."

During the third week of August, 2011, Alpha Capital became aware of a settlement agreement between ACTI, Midsummer Investment, Ltd. and Midsummer Small Cap Master, Ltd. Those entities are also investors in the same offering of the ACTI Warrants and Convertible Notes held by Alpha Capital. The terms of that settlement, reached earlier in August, were disclosed in a form 8-K filed by ACTI on August 17, 2011 (Exhibit H). Based upon a review of that document, it appeared that ACTI was issuing stock at prices lower than the then applicable Exercise and Conversion Price. ACTI never notified Alpha Capital of that fact. That prompted a review of ACTI's public filings which revealed that ACTI had issued convertible notes to JMJ Financial, Inc. during the first three months of 2010 which triggered an adjustment of the Exercise and Conversion Prices (Exhibit I, excerpts from ACTI's form 10-K filed March 17, 2011). Based upon the share issuances reported by ACTI in describing the JMJ Financial transaction, ACTI apparently issued stock to JMJ at a price of at most $0.353. Alpha Capital reasonably believes, however, based upon the publicly reported market price of ACTI stock and the disclosed terms of the JMJ convertible debentures, that ACTI issued shares to JMJ at less than $0.0353.[9]

Based upon Alpha's Warrant exercises and Convertible Note conversions since that time, which were calculated at the initial Exercise and Conversion Prices which Alpha Capital then believed still applied (and not at the applicable reduced Exercise and Conversion Prices resulting

---

[9]Alpha Capital arrived at the reduced price by dividing the 76,465,706 shares reportedly issued by ACTI to JMJ by the $3,562,215 reportedly paid by JMJ for those shares and then applying the original issue discount of 22% applicable to the JMJ convertible debentures because that discounted amount represents the true amount which JMJ paid for those shares.

from the JMJ transaction), and based upon Alpha Capital's exercise, on August 22, 2011, of the remaining unexercised portion of the Warrants, ACTI is obligated to deliver to Alpha Capital at least an additional 39,514,859 shares of ACTI stock, as set forth in Alpha Capital's e-mail to ACTI on August 22, 2011 (Exhibit J).[10] Because of Alpha Capital's uncertainty as to the lowest price which shares were issued by ACTI since November 2009, Alpha Capital requested ACTI to calculate with Alpha Capital the number of additional shares due and owing so that the matter could be resolved without court intervention. ACTI has failed and refused to communicate with Alpha Capital to resolve the matter.

ACTI has also clearly breached its obligation to notify Alpha Capital of each transaction which requires ACTI to reduce the Exercise Price of the Warrants and the Conversion Price of the Convertible Notes (footnote 8). Although there have clearly been stock issuances which require reductions in those prices, ACTI has never provided Alpha Capital with any of the contractually required notices and calculations regarding the lower Exercise and Conversion prices. Alpha Capital, therefore, requests this Court to enter an immediate order requiring ACTI to respond immediately to an interrogatory, annexed hereto as Exhibit D, which requires ACTI to list all stock issuances, including stock issued upon conversion of ACTI's outstanding convertible securities, since November 12, 2009, the date of Alpha Capital's latest investment in ACTI which is the subject of this lawsuit, and the prices at which such stock was issued. That

---

[10]That email sets forth all of the Warrant exercises and Convertible Note conversions after the JMJ Financial transaction which required ACTI to issue additional shares, based upon the lower Exercise or Conversion Price, which should have been applied to those exercises and conversions. That email, on August 22, 2011, also exercised the remaining as yet unexercised portion of the Warrants by requesting ACTI to deliver 14,648,839 shares in exchange therefor.

information is readily available to ACTI and is essential to determine the correct calculation of the exact price to which the Exercise and Conversion Prices must be reduced and the exact number of additional shares to which Alpha Capital is entitled.

Irreparable Harm

Absent the award of immediate injunctive relief, Alpha Capital will suffer irreparable harm. First, ACTI agreed in writing that its failure to honor the terms of the Warrants and the Convertible Notes would entitle Alpha Capital to injunctive relief. Thus ¶13(e) of the Subscription Agreement (Exhibit G) provides:

> 13(b)    Specific Enforcement, Consent to Jurisdiction. The Company and Subscriber acknowledge and agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. It is accordingly agreed that the parties shall be entitled to seek an injunction or injunctions to prevent or cure breaches of the provisions of this Agreement and to enforce specifically the terms and provisions hereof, this being in addition to any other remedy to which any of them may be entitled by law or equity. [The Warrants and the Convertible Notes are Exhibits to the Subscription Agreement.]

Absent immediate injunctive relief, Alpha Capital will in fact suffer irreparable harm. ACTI, according to its public filings, is a biotechnology company focused on developing and commercializing human embryonic and adult stem cell technology in the emerging fields of regenerative medicine. Its principal activities have included obtaining financing, securing

11

operating facilities, and conducting research and development. ACTI has no therapeutic products currently available for sale and does not expect to have any therapeutic products commercially available for sale for a period of years, if at all (ACTI Prospectus filed 8/29/11, Exhibit K). In short, ACTI is a development stage company with no assurance whatsoever that it will have an actual product or be in business at the end of a lengthy litigation.

Even more compelling is ACTI's admission that its "ability to continue its research and development activities is dependent upon the ability of management to obtain additional financing as required (ACTI Prospectus filed 8/29/11, Exhibit K)." Alpha Capital should not be compelled to bear the risk that ACTI's management will be able to raise funds in the future, on acceptable terms, to pay any monetary damages award when ACTI's contract obligation is to deliver stock and Alpha Capital, consistent with that obligation, is seeking the stock which ACTI agreed to deliver. ACTI admits, that if it cannot successfully raise funds in the future, "we will be forced either to scale back our business efforts or curtail our business activities entirely" (ACTI Prospectus filed 8/29/11, Exhibit N).

ACTI has a negative net worth as of June 30, 2011, the date of its most recent publicly filed financial statements, of over $6 million (ACTI Prospectus filed 8/29/11, Exhibit L). It has never earned a profit. Indeed, ACTI reports an accumulated deficit of almost $190 million (ACTI Prospectus filed 8/29/11, Exhibit M). In the six months ended June 30, 2011, ACTI reported a loss exceeding $8 million (ACTI Prospectus filed 8/29/11, Exhibit M). ACTI itself admits, "On a long term basis, we have no expectation of generating any meaningful revenues from our product

candidates for a substantial period of time and will rely on raising funds in capital transactions to finance our research and development programs (ACTI Prospectus filed 8/29/11, Exhibit N). Thus, it is unlikely that ACTI can pay any likely damages award at the end of a lengthy litigation.

Further, as ACTI admits in its public filings, it continues, "to repay [its] debt financings in shares of common stock . . . (ACTI Prospectus filed 8/29/11, Exhibit N)." Alpha Capital acquired its Convertible Notes and Warrants in such debt financings. ACTI should not be permitted to claim that Alpha Capital should be compelled to wait until the end of this litigation to obtain a judgment which must then be satisfied from ACTI's assets, if any, while ACTI continues to pay other holders of its debt securities in stock, particularly when it agreed to deliver stock to Alpha Capital, upon exercise of its Warrants and conversion of its Convertible Notes. That, Alpha Capital submits, would be a very inequitable result.

As is set forth in the memorandum of law served herewith, the likely inability of a defendant to satisfy any ultimate judgment at the end of the case, either because the defendant no longer exists or because it is bankrupt, all should compel this Court to award the requested preliminary injunctive relief.

It will also be extremely difficult, if not impossible, to calculate with any certainty the damages resulting from ACTI's failure to deliver the stock. The dates upon which Alpha Capital would have sold the stock it did not receive, and the amounts Alpha Capital would have realized from any such sales, will be difficult to establish with any degree of certainty, particularly given

the volatility of ACTI stock (Exhibit O). Further, ACTI's failure to honor its obligation to notify

Alpha Capital of changes to the Exercise and Conversion Prices affected Alpha Capital's

business decisions regarding when to exercise its Warrants and when to convert its Convertible

Notes and sell the shares received into the open market. ACTI reached a high of $0.26 and is now

trading around $0.16. Knowledge that the proper Exercise and Conversion Prices were $0.0353

would have caused Alpha Capital to exercise its Warrants and convert its Convertible Notes at

different times than it in fact did.

When Alpha Capital, however, would have exercised its Warrants and converted its

Convertible Notes, based upon receipt of complete and timely contractually required information

from ACTI as to the proper Exercise and Conversion Prices and when Alpha Capital would have

sold those shares on the open market, will be difficult, if not impossible to prove. Such inability

to calculate damages with precision, I am informed, also constitutes irreparable harm supporting

an award of preliminary injunctive relief. It is for all the above reasons that the parties in the

Subscription Agreement agreed to an award of preliminary injunctive relief to remedy ACTI's

wrongs set forth herein.

Alpha Capital previously sued ACTI in this Court for failure to deliver shares upon

conversion of its convertible securities. The Court granted Alpha Capital's request for

preliminary injunctive relief and required ACTI to deliver shares immediately to Alpha Capital

based upon the finding that ACTI's likely inability to satisfy the ultimate judgment after trial

constituted irreparable harm warranting the award of preliminary injunctive relief. Judge

14

Kaplan's determination in that case is annexed hereto as Exhibit P. Other investors also sued ACTI and were also awarded preliminary injunctive relief directing delivery of the shares therein requested (Exhibit Q).

There is no reason why the Court should not hold ACTI to the terms of its agreement and enter the requested injunction. ACTI agreed to those terms to obtain Alpha Capital's substantial investment. Alpha Capital has in fact suffered irreparable harm. ACTI should not be permitted to evade its agreement when Alpha Capital seeks to obtain the very relief which the parties, at the inception of the investment, agreed Alpha Capital could obtain to remedy ACTI's defaults.

There has been no previous application for the relief requested herein.

Wherefore, Alpha Capital respectfully requests that the Court issue an order directing Defendant Advanced Cell Technology, Inc. to deliver immediately at least 39,514,859 shares of its common stock to Alpha Capital and respond to the Interrogatory annexed hereto as Exhibit D.

15

Dated: September 14, 2011

Konrad Ackermann