FILED: NEW YORK COUNTY CLERK 08/31/2010
NYSCEF DOC. NO. 32

INDEX NO. 600730/2009
RECEIVED NYSCEF: 08/31/2010

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: Bransten          PART 3m
                    *Justice*

Bristol Investment Fund, LTD

INDEX NO. 600730/09

MOTION DATE 10/29/09

- v -

MOTION SEQ. NO. 002

Advanced Cell Technology

MOTION CAL. NO. _____

The following papers, numbered 1 to __4__ were read on this motion to/for PI + Dismiss

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | 1 |
| Answering Affidavits — Exhibits | 2 |
| Replying Affidavits | 3,4 |

**Cross-Motion:**  ☒ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion

**IS DECIDED**

**IN ACCORDANCE WITH ACCOMPANYING MEMORANDUM DECISION**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: 8-30-10

HON. EILEEN BRANSTEN  J.S.C.

Check one: ☐ FINAL DISPOSITION  ☒ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST

EXHIBIT Q

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:   IAS PART 3
-------------------------------------------------------------------x
BRISTOL INVESTMENT FUND, LTD. and
BRISTOL CAPITAL, LLC,

                              Plaintiffs,              Index No. 600730/09
           -against-                                   Motion Date: 10/29/09
                                                       Motion Seq. No.: 002
ADVANCED CELL TECHNOLOGY, INC. and
MYTOGEN, INC.

                              Defendants.
-------------------------------------------------------------------x
Bransten, J.:

        By order to show cause, plaintiff Bristol Investment Fund, Ltd. ("Bristol")[1] moves,

pursuant to CPLR 6301 and 6311, for a preliminary injunction: (a) directing defendant

Advanced Cell Technology, Inc. ("ACT") to deliver immediately 2.5 million shares of its

common stock to Bristol in accordance with a convertible debenture ACT issued on

March 31, 2008; (b) directing ACT to deliver immediately 47.4 million shares of its

common stock to Bristol in accordance with certain common stock purchase warrants

issued by ACT; (c) directing ACT to honor all future conversion requests duly submitted

by Bristol, in accordance with the convertible debenture and the warrants held by Bristol,

at $0.02 per share, subject to further downward adjustment as provided in the agreements

between the parties; and (d) enjoining and restraining ACT from issuing shares of its

common stock to any person or entity other than Bristol and the other holders of ACT

NYS SUPREME COURT
RECEIVED

AUG 3 1 2010

MOTION SUPPORT OFFICE

---

[1] Bristol Capital, LLC is no longer a plaintiff in this action. After defendants moved to
stay the action pending arbitration of Bristol Capital, LLC's claims, it agreed to withdraw its
claims, and, if it so chooses, to pursue arbitration.

*Bristol Investment Fund v. Advanced Cell Tech.*                    Index No. 600730/09
                                                                          Page 2

convertible debentures unless and until ACT complies with its contractual obligation to reserve sufficient shares of common stock for issuance to Bristol.

Defendants cross-move, pursuant to CPLR 3211 (a) (1), for an order dismissing this action.

## Background

ACT is a biotechnology company that focuses on stem cell research. Bristol, a hedge fund, holds a convertible debenture and four warrants issued by ACT. In January 2009, Bristol served exercise and conversion notices under those documents to receive shares of ACT common stock. ACT did not deliver the stock, and Bristol later commenced the instant action, alleging that ACT's failure to deliver the stock was a default of its contractual obligations to Bristol under the terms of various agreements between them. In its motion for a preliminary injunction, Bristol seeks, among other things, immediate delivery of those shares. According to Bristol, ACT is essentially an insolvent start-up company that has never earned a profit, with less than $1 million in assets and more than $72 million in liabilities. Bristol argues that a preliminary injunction is appropriate in such circumstances because money damages are not a realistic alternative.

On March 31, 2008, Bristol and other note holders entered into a Securities Purchase Agreement with ACT (the "2008 SPA"), which involved issuance of certain

*Bristol Investment Fund v. Advanced Cell Tech.*

Index No. 600730/09

Page 3

debentures and common stock warrants. ACT contends that the 2008 private placement carried out pursuant to the 2008 SPA was, at that time, the latest in a series of private placements by ACT.

In relation to the 2008 SPA, Bristol purchased a convertible debenture from ACT (the "Convertible Debenture") with a face value of $407,035 and a maturity date of March 31, 2009, upon terms and conditions set forth in the Convertible Debenture and the 2008 SPA. Other investors entered into the 2008 SPA and bought ACT's convertible debentures at the same time. Bristol argues that, pursuant to earlier investments, it had received from ACT four Common Stock Purchase Warrants (the "Warrants") to buy an aggregate of 7,884,846 shares in varying amounts at $0.165 per share, subject to adjustment as to share amount and share price in accordance with their terms.

Bristol contends that upon submission of a Notice of Conversion it could opt to convert, at any time, all or part of the Convertible Debenture into shares of ACT common stock. ACT was required to deliver the stock within three trading days. The conversion price for the Convertible Debenture was initially set at $0.15 per share, subject to downward adjustment upon the occurrence of certain events, including if ACT at any time thereafter offered or sold any stock at a price lower than the initial conversion price. ACT also agreed to reserve a sufficient number of duly authorized shares to cover all of its conversion obligations under the convertible debentures.

*Bristol Investment Fund v. Advanced Cell Tech.*                    Index No. 600730/09
                                                                    Page 4

Bristol states that, in late 2008, ACT informed Bristol that it had issued millions of shares of common stock at prices as low as $0.02 per share and that ACT did not have enough authorized and unissued shares to meet its conversion obligations under the convertible debentures. On January 23, 2009, Bristol submitted a Notice of Conversion to convert $50,000 of the principal amount of the Convertible Debenture, at a price of $0.02 per share, into 2.5 million shares of ACT stock.

Bristol contends that, under the terms of the Warrants, the exercise price was similarly reduced to $0.02 per share by virtue of ACT's earlier stock issuances at that price, with corresponding increases in the number of shares to purchase. On January 26 and 27, 2009, Bristol submitted four notices of exercise to ACT, seeking 59,400,828 shares in the aggregate, but subject to a limitation on conversion that Bristol could not receive more than 9.99% of ACT's issued and outstanding shares. Thus, Bristol calculates that, as of June 30, 2009, it could not receive more than 49,940,573 shares.

Including the shares allegedly due under the Convertible Debenture in that total, Bristol asserts that it is entitled to receive an additional 47.4 million shares on account of its exercise of the Warrants. Bristol maintains that ACT failed to deliver the shares under both the Convertible Debenture and the Warrants, and also failed to reserve sufficient shares to meet is conversion obligations.

In January 2009, Alpha Capital Anstalt ("Alpha"), another noteholder of ACT convertible debentures, brought an action against ACT in federal court in the Southern

*Bristol Investment Fund v. Advanced Cell Tech.*                    Index No. 600730/09
                                                                    Page 5

District of New York,. Alpha claimed that ACT had sold shares at $0.02 per share, that

Alpha had filed a conversion notice to convert a certain amount of its debentures into

shares at that price and that ACT had failed to deliver any of those shares. Alpha moved

for a preliminary injunction similar to the one Bristol seeks herein. On February 13,

2009, the federal court granted Alpha a preliminary injunction and directed ACT to

deliver the shares sought by Alpha, at the price of $0.02 per share. Alpha and ACT

entered into a stipulation of settlement on March 6, 2009, which was so ordered by the

federal court on March 11, 2009.

On March 9, 2009, Bristol filed the complaint in the instant action.

On July 29, 2009, ACT and 96.8% of the noteholders of its convertible debentures

and warrants, including Alpha, entered into two related contracts: a Consent,

Amendment and Exchange Agreement (the "Amending Agreement") and a Standstill and

Forbearance Agreement (the "Forbearance Agreement"). The noteholders who signed

these agreements received new notes with new terms, setting forth a new financial

arrangement with ACT. Significantly, Bristol did <u>not</u> sign either the Amending

Agreement or the Forbearance Agreement.

ACT contends that the two agreements restructured the underlying transaction

documents, amended the 2008 SPA, the prior securities purchase agreements, the

debentures, the warrants and other related documents and substituted amended debentures

and warrants for the outstanding debentures and warrants. ACT points out that the

*Bristol Investment Fund v. Advanced Cell Tech.*

Index No. 600730/09
Page 6

Amending Agreement extended the maturity date of the debentures and the termination date of the warrants and adjusted the conversion price of the debentures and warrants downward, from $0.15 to $0.10 per share. ACT notes that section 14 of the Amending Agreement provides that its terms are to be deemed an "amendment" of, and take precedence over any term in, any and all of the other transaction documents.

On September 10, 2009, by a vote at a special shareholders' meeting, ACT received shareholder permission to increase its authorized shares for issuance from 500 million to 1.7 billion. A few days later, Bristol filed the instant order to show cause for a preliminary injunction.

The parties dispute the meaning of two key provisions applicable to the issues in the instant motion and cross motion. One of the provisions, paragraph 1 of the Amending Agreement addresses prior events of default on the part of ACT and states:

> <u>Waivers of Certain Events of Default</u>. Each Holder hereby agrees to waive each Event of Default resulting solely from (a) any adjustment to the Conversion Price of the Debentures and the Exercise Price of the Warrants that would result from the reduction of the conversion price of certain securities of [ACT] pursuant to the [March 11, 2009 Stipulation of Settlement between Alpha and ACT] and (b) any failure by [ACT] to reserve such number of authorized but unissued shares of Common Stock equal to the Required Minimum as required pursuant to Section 4.11 of the Purchase Agreements.

Another important provision, which is interpreted differently by Bristol and ACT, is section 5.5 of the 2008 SPA. Section 5.5. states, in pertinent part, that:

*Bristol Investment Fund v. Advanced Cell Tech.*                    Index No. 600730/09
                                                                    Page 7

[n]o provision of this Agreement may be waived, modified, supplemented
or amended except in a written instrument signed, in the case of an
amendment, by [ACT] and the Purchasers holding at least 67% in interest
of the Securities then outstanding or, in the case of a waiver, by the party
against whom enforcement of any such waived provision is sought.

According to Bristol, the amendment alternative for 67% of the holders is
prospective in nature. However, Bristol contends that if there has been a default, such
that there is a specific right that one note holder has that another party wants to take away,
that constitutes a waiver, for which the written consent of the affected party is needed.
Bristol argues that any other reading of section 5.5 of the 2008 SPA would take the clause
regarding waivers out of the 2008 SPA. Bristol argues that, because ACT breached the
2008 SPA, the Convertible Debenture and the Warrants in January 2009 by its non-
delivery of shares, Bristol's claim cannot be waived without its consent.

Bristol emphasizes that it did not sign the Amending Agreement and that it was
never intended that one group of noteholders could deprive another noteholder of the
right to enforce a default after ACT failed to deliver shares. Bristol maintains that,
although the Amending Agreement waived certain defaults, it did not and could not waive
ACT's defaults on Bristol's January 2009 exercise and conversion notices. Bristol states
that, because it exercised its conversion rights and asserted a default, ACT could only be
released from liability through a waiver signed by Bristol. In other words, according to
Bristol, its rights cannot be taken away after-the-fact by ACT or other noteholders.

*Bristol Investment Fund v. Advanced Cell Tech.*

Index No. 600730/09
Page 8

In opposition to the preliminary injunction motion, and in support of its cross motion to dismiss the complaint, ACT contends that section 5.5 of the 2008 SPA authorized the holders of at least 67% of the outstanding securities to amend the terms of any of the transaction documents associated with the 2008 SPA. ACT asserts that this occurred when ACT and 96.8% of the holders executed the Amending Agreement and the Forbearance Agreement.

According to ACT, the "supermajority clause" in section 5.5 of the 2008 SPA reflected the parties' desire to avoid situations in which a small number of dissenting purchasers might withhold their approval of a future amendment of the agreements or a future restructuring of the securities, in order to seek additional compensation in exchange for their consent. ACT argues that Bristol is trying to unjustly enrich itself in such a manner by strategically holding out and refusing to sign the Amending Agreement.

ACT asserts that the Amending Agreement and Forbearance Agreement reflect the understanding it reached with Alpha and other holders of debentures and warrants that would allow ACT to cure its default, thereby avoiding events that could have jeopardized its ability to operate and might have wiped out the investments the holders had made in ACT. ACT contends that a supermajority of holders agreed with ACT that the terms of the Amending Agreement were more beneficial to them than individual attempts to try to recover in response to the event of default.

*Bristol Investment Fund v. Advanced Cell Tech.*                    Index No. 600730/09
                                                                   Page 9

According to ACT, under the Amending Agreement and the Forbearance Agreement now in effect, Bristol's claims are moot, and Bristol is precluded from continuing this action and from recovering any award or remedy for any event of default that previously occurred, or may have occurred, including any event of default based on the March 11, 2009 stipulation of settlement executed between ACT and Alpha.

### Analysis

To obtain a preliminary injunction, a movant must show:  (i) a likelihood of success on the merits; (ii) irreparable damage in the absence of the injunction; and (iii) a balance of the equities that favors the movant (*W.T. Grant Co. v Srogi*, 52 NY2d 496, 517 [1981]).  Bristol maintains that its likelihood of success on the merits is overwhelming, that it will suffer irreparable harm without the injunction and that the equities are in its favor.  ACT argues that Bristol has not satisfied any of the three requirements to obtain the "drastic remedy" of a mandatory preliminary injunction.

Past Conversion Requests

It is undisputed that ACT failed to deliver stock to Bristol after it received Bristol's January 2009 Notice of Conversion and four Notices of Exercise, in relation to the Convertible Debenture and the Warrants, respectively.  It is also undisputed that ACT agreed to adjust the conversion price and exercise price set forth in the applicable

*Bristol Investment Fund v. Advanced Cell Tech.*                    Index No. 600730/09
                                                                    Page 10

documents downward if it thereafter offered or sold any stock at a price lower than the
initial conversion and exercise prices.

Thus, the crux of the matter is whether, as Bristol argues, ACT's default remains
actionable, or whether, as ACT argues, its default is no longer actionable, due to the
subsequent execution of the Amending Agreement by ACT and 96.8% of the note
holders. This court finds that Bristol's claims regarding ACT's default remain viable.
Section 5.5 of the 2008 SPA clearly and specifically treats waivers differently than it
treats amendments, such that waivers cannot be accomplished by a supermajority of
holders, but only with the written agreement of the affected party.

ACT does not address the waiver language of section 5.5 of the 2008 SPA in its
opposition papers or in support of its motion to dismiss. Instead, to the exclusion of the
waiver aspect, it focuses on the supermajority portion of section 5.5. The interpretation
urged by ACT would render the waiver provision of section 5.5 meaningless, in violation
of the rule that "[i]n construing a contract, one of a court's goals is to avoid an
interpretation that would leave contractual clauses meaningless" (*Two Guys from
Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396, 403 [1984]).

Regarding the price at which ACT must convert the shares sought by Bristol in its
January 2009 notices of conversion and exercise, Bristol is entitled to the price of $0.02
per share. The share price was lowered to that level in ACT's settlement agreement with
Alpha. Furthermore, prior to the settlement agreement, the federal court in the Alpha

*Bristol Investment Fund v. Advanced Cell Tech.*                    Index No. 600730/09
                                                                   Page 11

action granted Alpha a preliminary injunction, in which it ordered that Alpha was entitled

to ACT stock at a price of $0.02 per share.

   For the above reasons, Bristol has a very strong likelihood of success on prongs (a)

and (b) of its preliminary injunction motion, in which it asks the court to direct ACT to

deliver the shares it sought in its January 2009 Notices of Exercise and Notice of

Conversion at the price of $ 0.02 per share.

   ## Future Conversion Requests

   The court finds that Bristol has not demonstrated that it has a strong enough

likelihood of success to merit a preliminary injunction on that part of its motion in which

Bristol seeks an order of the court directing that all of its *future* conversion requests under

the Convertible Debenture and the Warrants also be at the price of $ 0.02 per share.

While it is clear that the $0.02 price is applicable to the shares that Bristol sought in

January 2009, upon which ACT defaulted, the continued applicability of the price of

$0.02 per share for future conversions has not been established, given the terms of the

Amending Agreement, which came into existence subsequent to Bristol's January 2009

notices of conversion and exercise, but prior to any future requests Bristol may submit.

   ## Future Issuance of Common Stock

   The fourth prong of the requested preliminary injunction, under which Bristol

seeks an order of this court restraining ACT from issuing shares of its common stock to

anyone other than Bristol and other noteholders until ACT complies with its contractual

*Bristol Investment Fund v. Advanced Cell Tech.*

Index No. 600730/09
Page 12

obligation to reserve sufficient shares for issuance to Bristol, is denied.  In light of the shareholder vote of September 2009, in which the number of shares authorized for issuance was increased from 500 million to 1.7 billion, there is no shortage of available shares and, thus, such a restraint would unnecessarily burden ACT without providing any benefit to Bristol.  While the federal court granted a preliminary injunction including a similar provision in the Alpha case, that occurred prior to the September 2009 vote, at a time when there were insufficient shares to satisfy the other parts of the preliminary injunction issued by the federal court.

<u>Irreparable Harm</u>

Bristol contends that it will suffer irreparable harm in the absence of a preliminary injunction.  It points out that, pursuant to the 2008 SPA, ACT agreed that its failure to honor the terms of the agreements between them would entitle Bristol to injunctive relief.

Bristol also maintains that ACT is a development stage company with no assurance that it will be in business at the end of a lengthy litigation.  Bristol argues that ACT's recent proxy materials confirm its precarious financial position.  Bristol asserts that it should not be required to assume the risk that ACT will not be a viable entity that can respond to any ultimate judgment, particularly when Bristol's rights to the shares are clear.  Bristol contends that the inability of a defendant to satisfy any ultimate judgment at the end of the case, either because the defendant no longer exists or because its assets

*Bristol Investment Fund v. Advanced Cell Tech.*                    Index No. 600730/09

Page 13

may prove valueless if it ceases operations, should persuade this court to award the requested preliminary injunctive relief.

Bristol further contends that it will be very difficult, if not impossible, to calculate with any certainty the damages resulting from ACT's failure to deliver the stock. Bristol believes that ACT has issued several million shares to the noteholders who signed the Amending Agreement, providing them with shares in advance of Bristol, and that the shares are being traded in the public markets. Bristol argues that the dates upon which it would have sold the stock it did not receive, and the amounts it would have realized from any such sales, will be difficult to establish, especially in light of the volatility of ACT stock.

ACT argues that Bristol will not suffer irreparable harm absent a preliminary injunction. According to ACT, any injury to Bristol is entirely speculative. ACT also asserts that Bristol's contention regarding the financial health of ACT and the alleged difficulties in calculating monetary damages are speculative and premature. ACT maintains that it now has sufficient authorized and available shares to satisfy any judgment in the unlikely event that Bristol is successful. It further asserts that its business prospects are improving.

ACT argues that the balancing of the equities weighs in its favor. It asserts that the granting of a preliminary injunction would disrupt the restructuring and refinancing agreed to by ACT and a supermajority of its securities holders. ACT contends that it is

*Bristol Investment Fund v. Advanced Cell Tech.*

Index No. 600730/09
Page 14

likely that Bristol would also suffer greater harm if it succeeds in undermining the agreed-to terms of the refinancing, including risking bankrupting ACT.

In general, "[d]amages compensable in money and capable of calculation, *albeit* with some difficulty, are not irreparable" (*SportsChannel Am. Assoc. v National Hockey League*, 186 AD2d 417, 418 [1st Dept 1992]). In this case, however, the parties clearly anticipated the difficulty or inadequacy of any such calculation, by explicitly agreeing that each of them is entitled to specific performance under the 2008 SPA and related agreements. Section 5.15 of the 2008 SPA states, in part that "[t]he parties agree that monetary damages may not be adequate compensation for any loss incurred by reason of any breach of obligations contained in the Transaction Documents and hereby agrees [sic] to waive and not to assert in any action for specific performance of any such obligation the defense that a remedy at law would be adequate." Although this provision alone may not prove that there is irreparable harm, it does provide additional support for such a finding (*see e.g. Castle Cr. Tech. Partners, LLC v CellPoint Inc.*, 2002 WL 31958696, *4 n 5, 2002 U.S. Dist. LEXIS 23760, *13 n 5 [SD NY 2002]).

Furthermore, ACT is in an uncertain financial condition as a start-up company with liabilities much larger than its assets. Bristol submits ACT's 10-K filing with the Securities and Exchange Commission (the SEC) for the fiscal year ending December 31, 2008, which states on page 9 that "[n]otwithstanding success in raising capital, there continues to be substantial doubt about [ACT's] ability to continue as a going concern."

*Bristol Investment Fund v. Advanced Cell Tech.*                    Index No. 600730/09
                                                                    Page 15

In response, ACT submits its 10-K filing with the SEC for the fiscal year ending
December 31, 2009 (the 2009 10-K) and notes improvements in its financial position.
ACT points out that the "going concern" language is not found in the more recent filing.
The court notes, however, that serious questions as to the viability of the company
remain.  Page 23 of the 2009 10-K, for example, contains the statement that "[w]e have
limited capital resources and we may not obtain the significant additional capital required
to sustain our research and development efforts.  We will need additional capital to
conduct our operations and develop our products and our ability to obtain the necessary
funding is uncertain. ... We have losses from operations, negative cash flows from
operations and a substantial stockholders' deficit and we do not believe that our cash from
all sources ... is sufficient for us to continue operations beyond March 16, 2011."

Thus, in light of ACT's highly uncertain financial situation and future, the court
finds that a determination of irreparable harm is appropriate (*see e.g. Castle Cr. Tech.
Partners; LLC v CellPoint Inc., supra*).

Bond

Bristol asserts that it should not be required to post a bond, because there is no
reasonable possibility that ACT will suffer any monetary damages as a result of being
compelled to comply with its contractual obligations, or that ACT will suffer harm if the
injunction is granted and Bristol obtains the stock to which it is entitled.  According to
Bristol, the court should dispense with the requirement of or require only a nominal bond.

*Bristol Investment Fund v. Advanced Cell Tech.*

Index No. 600730/09

Page 16

At oral argument, plaintiff noted that in the Alpha federal court action, the judge set a bond of $75,000.  Bristol suggests that $75,000, or even $100,000, would be appropriate.

Balance of the Equities

As to the balance of the equities, the court finds that, because Bristol's entitlement to the shares in question has been established, granting it immediate delivery of those shares does not unfairly burden ACT.

While mandatory preliminary injunctions are held to a more rigorous standard, in which the movant must show a clear likelihood of success on the merits (*see e.g. Almontaser v New York City Dept. of Educ.*, 519 F3d 505, 508 [2d Cir 2008]), in light of: (a) Bristol's very high likelihood of success on the merits of its claim to receive the shares it sought in its January 2009 exercise and conversion notices at $0.02 per share; (b) Bristol and ACT's written agreement allowing injunctive relief as a remedy for any breach; (c) the granting of a similar injunction by the federal court in the Alpha case; and (d) the uncertainty of ACT's viability and its financial position at the end of any litigation, this court grants that part of the preliminary injunction seeking the immediate delivery of those shares at the price of $0.02 per share.

*Bristol Investment Fund v. Advanced Cell Tech.*                    Index No. 600730/09
                                                                   Page 17

## Order

Accordingly, it is

ORDERED that plaintiff's motion for a preliminary injunction is granted in part, to the extent that defendant Advanced Cell Technology, Inc. is directed to: (a) deliver immediately 2.5 million shares of its common stock to plaintiff, at $0.02 per share, in accordance with the Convertible Debenture; and (b) deliver immediately 47.4 million shares of its common stock to plaintiff, at $0.02 per share, in accordance with the Warrants; and the motion is otherwise denied; and it is further

ORDERED that the undertaking is fixed in the sum of $100,000.00 conditioned that the plaintiff, if it is finally determined that it was not entitled to an injunction, will pay to the defendant all damages and costs which may be sustained by reason of this injunction; and it is further

ORDERED that defendants' cross motion to dismiss is denied; and it is further

ORDERED that counsel are directed to appear for a conference in Room 442 at 60 Centre Street, on September 21, 2010, at 9:30 A.M.

This constitutes the decision and order of the court.

Dated: New York, New York
       August 30, 2010

                              ENTER:

                              Hon. Eileen Bransten, J.S.C.