UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x
ALPHA CAPITAL ANSTALT, :
:
        Plaintiff, :
:
- against - : 1:11-cv-6458 (PAC)
:
ADVANCED CELL TECHNOLOGY, : ORDER
INC., :
:
        Defendants. :
------------------------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 14, 2011

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiff Alpha Capital Anstalt ("Alpha Capital") moves for a preliminary injunction and preliminary declaratory relief, pursuant to Federal Rule of Civil Procedure 65 and 28 U.S.C. § 2201, against Defendant Advanced Cell Technology ("ACTI"). Alpha Capital seeks an order directing ACTI to deliver certain shares of its common stock to Alpha Capital in accordance with the terms of its Warrants and Convertible Promissory Notes. For the reasons discussed below, Alpha Capital's motion is GRANTED.

## SUMMARY OF FACTS

      On or about November 12, 2009 and February 18, 2010, Alpha Capital purchased Convertible Notes and Warrants (the "Convertible Notes and Warrants") for ACTI common stock pursuant to a Subscription Agreement (the "Subscription Agreement"). (Affirmation of Konrad Ackermann ("Ackermann Aff.") at 5.) Both the Warrants and Convertible Notes contained provisions entitling Alpha Capital to exercise or convert all or part of the Warrants and Convertible Notes into shares of ACTI common stock. The Warrants had an initial exercise price of $0.108 per share, and the Convertible Notes had an initial conversion price of $0.10 per share. (Id. at 6.) Alpha Capital alleges that these initial exercise and conversion prices were

1

subject to a downward adjustment in the event that ACTI issued shares, or securities convertible into shares, at a price below the initial exercise and conversion price.  (Id. at 6-7 and 7 n.7.)  The Warrants and Convertible Notes also provided that if ACTI issued shares, or securities convertible into shares, below the initial exercise and conversion price, then ACTI was obligated to notify Alpha Capital immediately and to increase the number of Alpha Capital's shares covered by the Warrants and Convertible Notes according to a set formula.  (Id. at 8.)  The parties do not dispute the express language of these provisions.

Alpha Capital alleges that on August 17, 2011, it learned through a form 8-K disclosure by ACTI that ACTI had issued stock at prices below $0.10 pursuant to a settlement agreement with other investors.  (Id. at 9.)  Based on that disclosure, Alpha Capital then reviewed ACTI's public filings and learned that ACTI had issued convertible notes to another investor, JMJ Financial, Inc., in early 2010.  (Id.)  Although Alpha Capital alleges that ACTI's public filings suggest that ACTI issued shares to JMJ at a price of "at most $0.353," Alpha Capital alleges that the actual price of these shares was $0.0353.[1]  (Id.)  Alpha Capital argues that the actual price of $0.0353 triggered the notification and adjustment obligations under the Warrants and Convertible Notes, and that ACTI was required to deliver 39,514,859 shares of its common stock to Alpha Capital.  ACTI has not delivered these shares in response to Alpha Capital's demand.

Alpha Capital filed this action on September 15, 2011.  The Court held a preliminary injunction hearing on October 3, 2011.

---

[1] Alpha Capital contends that the information reported in ACTI's form 10-K of March 2010, which suggests ACTI issued shares to JMJ at a price of $0.353, is misleading because it does not incorporate an original issue discount of 22%.  To calculate the reduced issue price of $0.0353, Alpha Capital "divid[ed] the 76,465,706 shares reportedly issued by ACTI to JMJ by the $3,562,215 reportedly paid [the Court assumes the dollar amount was divided by the number of shares to yield a result as to which the original issue discount was applied to get the price] by JMJ for those shares and then applying the original issue discount of 22% applicable to the JMJ convertible debentures . . . ."  (Ackermann Aff. at 9 n.9.)

**DISCUSSION**

**I.  Preliminary Injunction Standard**

To obtain a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65, a movant must establish: (1) the likelihood of irreparable harm, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions regarding the merits of the claim to make them a fair ground for litigation, with the balance of hardships tipping decidedly in the plaintiff's favor.  Louis Vuitton Malletier v. Burlington Coat Factory, 426 F.3d 532, 537 (2d Cir. 2005) (citation omitted).  Where the injunction will alter the status quo, rather than merely maintain it, however, the party seeking an injunction must meet a higher standard and show a "clear" or "substantial likelihood of success on the merits."[2]  Tom Doherty Assoc., Inc. v. Saban Enter., Inc., 60 F.3d 27, 34 (2d Cir. 1995).

**A.     Irreparable Harm**

In order to demonstrate a likelihood of irreparable harm, the party seeking an injunction must show that "the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages."  NAACP v. Town of New Haven, 70 F.3d 219, 224 (2d Cir. 1995) (citation omitted).  Irreparable harm may exist where there is a risk that a defendant may become insolvent before a judgment can be collected.  See, e.g., Brenntag Int'l. Chem., Inc. v. Bank of India, 175 F.3d 245, 250 (2d Cir. 1999) (irreparable harm present where obligation owed by insolvent defendant).

Alpha Capital points to a provision in the parties' Subscription Agreement stating that Alpha Capital would suffer irreparable harm if ACTI failed to comply with the terms of the Warrants and Convertible Notes.[3]  While not dispositive on the question of irreparable harm, this

---

[2] The parties agree that Alpha Capital must meet this higher standard of proof on its motion for injunctive relief.
[3] Paragraph 13(b) of the Subscription Agreement provides in relevant part:

3

provision is a relevant fact for the Court to consider.  See Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999) (stating that provision in a contract stipulating that irreparable harm would result from breach "might arguably be viewed as an admission").

Second, Alpha Capital argues that it will face irreparable harm without injunctive relief because ACTI is at or near insolvency and may not be able to pay a money judgment.  According to Alpha Capital, ACTI's most recent financial statements show that it has a negative net worth of over $6 million, has never earned a profit, and has an accumulated deficit of almost $190 million. (Ackermann Aff. at 12.)  ACTI's most recent prospectus shows investment income as its only source of revenue, and the company has "no expectation of generating any meaningful revenues from our product stream for a substantial period of time."  (Ackermann Aff., Ex. N.)

In response, ACTI argues that an award of money damages is a sufficient remedy here and that insolvency is not imminent, as ACTI has "over $16 million cash on hand and virtually no debt, and losses only approximately $3 million on an operating cash basis per quarter." (Declaration of Gary Rabin ("Rabin Decl.") at ¶ 12).

The Court finds that Alpha Capital has met its burden to establish irreparable harm. Plaintiff specifically bargained for stock in the event that ACTI breached the notification and

---

Specific Enforcement, Consent to Jurisdiction.  The Company and Subscriber acknowledge and agree that irreparable harm would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached.  It is accordingly agreed that the parties shall be entitled to seek an injunction or injunctions to prevent or cure breaches of the provisions of this Agreement and to enforce specifically the terms and provisions hereof, this being in addition to any other remedy to which any of them may be entitled by law or equity.  [The Warrants and the Convertible Notes are Exhibits to the Subscription Agreement.]

(Ackermann Aff. Ex. G.)

adjustment provisions in the Warrant and Convertible Notes.[4] Money damages would not make Alpha Capital whole. It is appropriate to hold ACTI to the terms of that agreement, as "[c]ompelling compliance rather than simply awarding damages reinforces the sanctity of bargains between corporations and creditors and investors[.]" Longview Special Fin., Inc. v. Infinium Labs., Inc., No. 06 Civ. 1772 (RJH), at 21 (S.D.N.Y. Nov. 29, 2006) (granting request for preliminary injunction and directing defendant's compliance with terms of conversion notices and warrants). Indeed, in a recent case involving the same parties and nearly identical issues, the court concluded that Alpha Capital "would have no adequate remedy of law in the absence of [a] preliminary injunction." Alpha Capital Anstalt v. Advanced Cell Tech., Inc., 09 Civ. 670 (LAK), at 17 (S.D.N.Y. Feb. 10, 2009). That conclusion applies with equal force here. Second, even if a money judgment were appropriate, there is a risk that ACTI could not satisfy it, as ACTI's form 10-K for December 2010 confirms that ACTI had an accumulated deficit of $180,949,523 at the time of filing and that the company's revenues are limited. (Rabin Decl., Ex. B at 18.) In addition, the parties stipulated in the Subscription Agreement that specific performance would be the only adequate remedy for a breach of the provisions in the Warrants and Convertible Notes. For all these reasons, Alpha Capital has demonstrated that it will face irreparable harm, absent injunctive relief.

### B. Likelihood of Success on the Merits

After considering the evidence presented on Plaintiff's motion, ACTI's response as well as the arguments of counsel, the Court finds that Alpha Capital is substantially likely to prevail on the merits. The terms of the Warrants and Convertible Notes are clear and are not in dispute.

---

[4] As counsel for Plaintiff explained at oral argument, Advanced Capital bargained for stock in the event of a breach of the Warrant and Convertible Note obligations "[b]ecause we can sell that stock on the open market. That's why we did the deal . . . . Our intent wasn't to get paid off with whatever modest interest rate was on the Note; it's to get the stock." (Tr. at 19-20.)

Alpha Capital has demonstrated that ACTI issued shares to JMJ Financial at a price below $0.10, thus obligating ACTI to (1) notify Alpha Capital of the issuance; (2) reduce the exercise and conversion prices of Alpha Capital's Warrants and Convertible Notes; and (3) increase Alpha Capital's shares as set forth in the parties' agreement.

ACTI argues that there was no breach of these provisions because "all JMJ conversions of principal amounts of [JMJ's convertible notes] were at the conversion rate of $0.10 per share." (Rabin Decl. ¶ 7.) An examination of the JMJ convertible notes transaction demonstrates that ACTI's argument is not based on reality. JMJ agreed that "as long as it remains practical, it will continue to convert at $0.10 per share, as long as the Borrower continues to make whole on any loss on conversion . . . at $0.10 that should have occurred below $0.10 per share" by adding any conversion losses, or "Make Whole Amount," to the balance of the note.[5] (Rabin Decl. Ex. A.) This provision compels the conclusion that the conversion price of $0.10 on JMJ's notes was merely nominal; and that the true price was in fact less than $0.10. Consistent with that, JMJ and ACTI agreed to make up all losses by adding that difference to the value of JMJ's notes. Accordingly, Alpha Capital has satisfied its burden of showing a substantial likelihood of success on the merits and a likelihood of irreparable harm absent injunctive relief.

The Court declines to order Alpha Capital to post a bond in this case. While the language of Federal Rule of Civil Procedure 65(c) appears as mandatory, the bond requirement is discretionary. See Doctor's Assoc., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996) (finding bond requirement of Fed. R. Civ. P. 65(c) is within district court's discretion and not required where there is no proof of the likelihood of harm). ACTI argues that an injunction will "set off a 'chain

---

[5] Counsel for ACTI conceded at oral argument that this provision was not disclosed in ACTI's form 10-K. (Tr. at 32.) This fact further supports a finding that ACTI, at a minimum, breached the notice provisions in Alpha Capital's Warrants and Convertible Notes, as Alpha Capital learned about JMJ's "Make Whole" provision only after receiving ACTI's response papers and supporting Declaration of Gary Rabin. (Tr. at 13-14.)

reaction'" of destructive events leading to a "run on the bank" by other holders of ACTI's convertible notes and warrants, deterring any further investment in the company. (Rabin Decl. ¶ 17.) The Court is not persuaded by ACTI's argument, as it is highly speculative.[6]

## CONCLUSION

For the foregoing reasons, Alpha Capital's motion for a preliminary injunction is GRANTED. ACTI is directed to hold in escrow 39,514,859 shares of its common stock pending the entry of preliminary injunction. Counsel for Alpha Capital is directed to submit a proposed form of order to the Court in two weeks by Thursday, October 27, 2011. Alpha Capital's request for an order compelling ACTI to respond to an interrogatory is moot, as ACTI has already provided its response and objections to Plaintiff.

Dated: New York, New York
October 14, 2011

SO ORDERED

*Paul A. Crotty*

PAUL A. CROTTY
United States District Judge

---

[6] Indeed, there were investors present during oral argument who indicated that they would continue to invest in ACTI despite the high risks of doing so. (Tr. at 26.)